Licett vs. The State.

LEMUEL LICETT, plaintiff in error, *vs.* THE STATE OF GEOR-
GIA, defendant in error.

<div style="float:right">23   57
114  423
23   57
j120 301</div>

[1.] The admission of illegal evidence is not a sufficient ground for a new
trial, unless the admission of it was objected to.

[2.] A confession may be such that a jury will be at liberty to believe a part
of it, and to disbelieve a part of it.

[3.] By the Act of 1856, the Court takes the place of triers; therefore, when
sitting as trier under that Act, its decision must be final.

Indictment for Simple Larceny.    Tried in Baker Superi-
or Court, before Judge ALLEN, May Term, 1857.

Lemuel Licett, the defendant below, was indicted for
stealing a sorrel filly, the property of Enoch C. Brown.

He was tried at May Term, 1857, of Baker Superior Court,
and found guilty.

His counsel moved for a new trial on the following
grounds:

1st. Because the jury found contrary to the evidence.

2d. Because the Court erred in allowing the statements of
Isaac Bush and Hardegree to go to the jury as evidence.

3d. Because the Court allowed the confession of prisoner,
made at Brown's house, to go to the jury; said confession
having been made while he was in the custody of Harde-
gree, and under the restraint of Brown, Hardegree and Mus-
grove and others, and made with the hope of procuring his
release.

4th. Because the Court erred in charging the jury that poss-
ession of stolen goods was evidence of the theft; said charge
being upon an assumed state of facts, there being no evi-
dence that the defendant ever had possession of the stolen
filly.

5th. Because the Court erred in charging the jury that
confessions, although received with great caution, yet when
made voluntary, without restraint, and free from fear or hope
of reward, are to be regarded as any other evidence, and to

be believed or not according to the truth of the same; and in refusing to charge that the confessions of prisoner were to be received with great caution, and that the jury were bound to regard the whole confession made at the same time; and in charging that they were bound only to believe such portions of the confessions as they believed to be true.

6th. Because the Court erred in allowing the counsel for the State to call Enoch C. Brown back to the stand as a witness, and examine him as to facts before testified to, after he had been examined by the State and turned over to prisoner's counsel, who discharged him without cross examination.

7th. Because the Court erred in not excluding Hester and Scurry, two tales jurors, who had made themselves competent by their answers to the questions prescribed by the Act of 1856, but who had been challenged for cause, and proof submitted, that said jurors, from rumors and what they had heard of the case, had formed and expressed an opinion as to the guilt of the prisoner.

8th. Because the Court erred in refusing the motion to continue the case, made on the ground of the public excitement and prejudice against prisoner, arising from the transactions having recently occurred.

The following is the substance of the brief of evidence filed on the motion for a new trial:

*Enoch C. Brown,* for the State, testified that about the night of the 24th December last, his horses were out, and on going in search of them, he found his sorrel filly missing. He was not uneasy about her as she was accustomed to run out.   About the 20th January, he heard that she had been traded off; he went to where he had heard she was, at Colquitt, in Miller county, and found her in possession of Judge Bush.   Bush showed him his filly in the lot with two other sorrel animals about the same age; he recognized his filly

and demanded her of Bush, who refused to deliver her up. He paid Bush fifteen dollars before he could get her, that being the sum which Bush said he had given in a swap for her. They then took the filly and went in pursuit of prisoner; Bush went to get back his horse which he said he had traded to defendant for the filly; they remained together two days and nights, "waiting round;" Bush, after looking round a day or two, went home, and he loaned him the filly and he pursued alone after defendant.

A man by the name of Hardegree brought prisoner and the filly to his house; prisoner rode with Hardegree, and Hardegree said, "here is the man who has confessed taking your filly;" this was said in the presence of prisoner. (Counsel for prisoner was here allowed to examine witness as to the circumstances under which the confessions were made, before they were brought out.) At the time the confessions were made, prisoner was in charge of Hardegree, and witness and Musgrove and another man were present, and they would not have permitted him to go; their intention was to have him bound over; they did not caution him not to confess, nor did they inform him what would be the consequence if he did confess; no threats were made, nor was any reward offered him to make the confession; what he said was voluntary and of his own accord, and prisoner said that his object in making the confession was to clear himself of the charge. Witness was very angry when he saw prisoner, and did at one time threaten to stamp him, but thinks this was after the confession; prisoner was a young man and greatly under the strength of witness, at the time he was under Hardegree's charge.

Counsel for prisoner, after this examination, objected to the confessions being admitted in evidence. The Court overruled the objection; and the witness resuming, testified that prisoner said he traded the filly to Judge Bush, but that he did not steal her, but traded for her; that he traded with Peter Black, and gave Black an account for sixty dollars and

his note for the balance.   After this, witness  had horses caught to take prisoner to the  Sheriff; he objected  to riding a mule, said he would walk  first; so witness rode the mule and let prisoner ride his filly.   The party went to Milford about 10  or 11 o'clock at night.   Mr. Mason was requested to  write  out a warrant, and when he returned he  met  the party at the grocery and asked them to get down and drink ; prisoner objected and said he  had as  soon sit; witness objected to his sitting  on the  horse, and  ordered him  down while  the party were tying their  horses prisoner put whip to his horse and  escaped.   He laid out some six  days, when hearing that he was at his mother's, witness took a party and went to her house and found him  between the bed and matress; his mother denied that he  was there; pulled him  out of the bed and took him to Newton and had him committed ; while they were going with him to Newton, witness got sorry for him, as he was  walking, and let him  get up behind him ; prisoner suddenly kicked the horse in the flanks, and came near throwing  witness off; he then made  him  dismount and walk.   The filly was  worth a hundred and fifty dollars.   Prisoner stated that he had traded for the filly about 11 o'clock on the night of 24th December, between the house of Peter Black and Solomon Sutton's;  witness never so   d the mare to Black or to prisoner.

*Peter Black,* testified  that  he knows  the prisoner, and knew him in December last ; never  had any trade with him about any  property in December last; was in the county about Christmas, but did  not see  prisoner nor  sell him any mare or horse on  the 24th December, nor at any other time.

*Cross Examined.*—His name is  Peter Black,  and his father's name is  Peter  Black,  and they both  reside in this county.

*Re-examined.*—His name is Peter Black, Jr.

Licett vs. The State.

*Enoch C. Brown* was recalled by the State.—Prisoner objected to his being again examined; objection overruled; counsel for the State saying that there was a material point which he had forgotten when the witness was on the stand before. Brown then testified that prisoner said he traded with Peter Black, and traded him an account against his brother Ransom; he understood him to mean Peter Black, Jr., as witness knows of no brother Ransom which Peter Black, Sen. has; prisoner had lived with Ransom Black, and had every opportunity to know that he was brother to Peter Black, Jr.

The Court overruled the motion for a new trial, and prisoner by his counsel excepts.

LAW & SIMS, W. E. SMITH, R. H. CLARKE, for plaintiff in error.

Sol. Gen. EVANS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The question is, was the judgment overruling the motion for a new trial erroneous? and we answer, No.

The motion was put upon eight grounds. Of these, not one, in our opinion, was sufficient.

As to the first ground, we think that it is not true that "the jury found contrary to the evidence."

[1.] As to the second, it does not appear that the sayings of Bush and Hardegree to Brown, were *objected to*. And the admission of even illegal evidence will not be a ground for a new trial, unless the admission of it was objected to.

As to the third, it does not appear that any threat of any kind, or any promise of any kind, had ever been made to the accused, at the time when he confessed. His act of confession seems to have been a purely voluntary act.

As to the fourth, we think that there *was* evidence that the accused had had "possession of the stolen filly."

As to the fifth, it could not possibly have hurt the accused, that the Court told the jury that his confessions were "to be believed or not, according to their truth."

[2.] It is not true that a "jury is bound to regard the whole of a confession made at the same time." The confession may be such as to require them to believe a part of it, and to disbelieve a part of it. It follows, therefore, that they are not bound to regard more of a confession than they believe to be true. In respect to what is to be the test, as to what part of a confession is to be believed, if any, and what part disbelieved, if any, there is not made any question in this case.

As to the sixth, this ground relates to what was a mere matter of discretion in the Court, and there is nothing to show that the Court, in doing what it did in relation to the matter, abused its discretion.

As to the seventh, by the Act of 1856, prescribing who are qualified to serve as jurors in criminal cases, &c., the Court takes the place which, by the previous law, had been occupied by triers. *Acts* 230, 231.

Triers, by this previous law, might or might not have considered it sufficient to show a juror biased, that he had, from rumor and hearsay, formed and expressed an opinion as to the guilt or innocence of the person on trial. They would not have been *bound* to consider such evidence *sufficient to* show the juror biased. Hence, the decision of triers was final.

[3.] By the present law, the Court takes the place of triers. Therefore, by the present law, the decision of the Court, made as trier, must, in like manner, be final.

As to the eighth ground, this was abandoned.

None of the grounds being good, the Court was right in overruling the motion.

<div align="right">Judgment affirmed.</div>