## FLETCHER *v.* THE STATE.

1. When, after a proper preliminary examination as to their free and voluntary nature, confessions or criminating admissions are adjudged competent and received in evidence, there is no room for any question touching the propriety of having conducted the preliminary examination in the presence of the jury.

2. When, in verifying instructions given to the jury as set out in the motion for a new trial, the presiding judge qualifies the verification by referring to the whole charge of the court, such qualification must be regarded in construing the motion for a new trial. There was no error in defining or describing a reasonable doubt thus: "A reasonable doubt is such a doubt as the term itself implies. It is difficult to explain what a reasonable doubt is; it means a doubt that has something to rest upon, some reason that it is based on, such a doubt as would control you and you would be governed by in your own important business affairs; it means such a doubt as a sensible, honest-minded man would reasonably entertain in an honest investigation after truth, a doubt that would arise from the evidence or the want of evidence in the case. It does not mean a mere vague conjecture, or a bare possibility, of the innocence of the accused."

3. Declarations made with an exculpatory object may have an inculpatory effect. On a trial for arson, declarations by the accused designed and tending to explain his possession of some of the goods which were in the burned building immediately preceding the fire, and his knowledge touching the whereabouts and the possession of other parcels of the goods, were in their inculpatory tendency criminating admissions as distinguished from confessions, and it was error for the trial judge, in charging the jury, to denominate them confessions and instruct upon them as though they were admissions of guilt, instead of admissions of fact from which, together with other evidence, the jury might or might not infer guilt.

4. The evidence, without the declarations in question, being wholly insufficient to warrant the verdict, and with them of very doubtful sufficiency, the error of the court in treating the declarations as confessions necessitates a new trial, notwithstanding three different juries have found the accused guilty. There can be no punishment inflicted except as the result of a legal trial.

October 8, 1892.

Criminal law. Confession. Admission. Charge. Reasonable doubt. Evidence. New trial. Before Judge FISH. Sumter superior court. May term, 1892.

L. J. BLALOCK and C. W. BASS, for plaintiff in error.

C. B. HUDSON, solicitor-general, by HARRISON & PEEPLES, contra.

BLECKLEY, Chief Justice.

1. The court declined to require the jury to withdraw from the court-room so as not to hear the preliminary examination of two policemen touching facts relevant to the free and voluntary nature of certain declarations attributed to the accused which were about to be offered in evidence against him. It turned out that these declarations were not confessions of guilt. This being so, according to some authorities it was unnecessary to inquire whether they were free and voluntary or not. Other authorities seem to be to the contrary. And with the latter has been the practice in this State, without, perhaps, any direct adjudication upon the precise question having been definitely and distinctly made. But grant that the same rule holds with respect to criminating admissions as with respect to confessions of guilt, and grant also that the jury ought to be retired and remain out during the preliminary examination when the admissions offered prove not to have been voluntarily and freely made (as was the fact in *Hall* v. *The State*, 65 *Ga.* 36), there could certainly be no well-grounded reason for treating it as error to allow the jury to hear preliminary evidence which showed that the admissions were in fact free and voluntary, and were therefore properly receivable in evidence. We can see no room for any question touching the propriety of having conducted the preliminary examination in the presence of the jury when the examination disclosed nothing which the jury should not have been allowed to hear. *Holsenbake* v. *The State*, 45 *Ga.* 44; *Jones* v. *The State*, 65 *Ga.*

506; *Anderson* v. *The State*, 72 *Ga.* 98. Touching the practice of retiring the jury, the strict letter of *Hall* v. *The State, supra,* is not good law. Though approved *arguendo* in *McDonald* v. *The State*, 72 *Ga.* 55, it has since been properly explained and toned down in *Woolfolk's* case, 81 *Ga.* 564, 565, and the true rule announced to be that the question whether the jury shall be retired or not is one resting in the sound discretion of the court.

2. In verifying the motion for a new trial, the presiding judge qualified his approval by stating in effect that the language of the grounds must be taken in connection with the whole charge of the court, the charge being made a part of the motion itself. Construing the language as to reasonable doubt, complained of in the motion, in the light of the whole charge on that subject, as set out in the second head-note prefixed to this opinion, there was no error. The law furnishes no precise definition or description of a reasonable doubt, and the language used in this case may have been less felicitous than that sometimes employed by trial judges, but it was reasonably accurate and substantially correct. Indeed, on closely scrutinizing it we can discern no fault whatever to impute to it. The practice of detaching from its context a single sentence in the charge of the court and predicating an assignment of error upon it thus isolated, is altogether improper. It seems like an attempt to raise a discussion in the dark, instead of exposing the point in controversy to full view in the broad light of truth. The proper practice is to set out in the motion for a new trial the objectionable matter in its proper place, preceding and following it with all that was said on the subject which can fairly be regarded as qualifying or explaining the language complained of, and then point out the latter so as clearly to distinguish it from what is not complained of.

3. The accused made no confession of guilt, nor did he intend to make any. His declarations to the policemen were designed to explain his possession of some of the goods which were in the building immediately preceding the fire, and his knowledge touching the whereabouts of other goods which when found were not in his possession but, like those which were, constituted a part of the property which could be regarded as fruits or probable fruits of the arson. It is evident that the declarations were made with an exculpatory object, but of course they might have had an inculpatory effect. This would depend upon the view which the jury might take of them in connection with all other facts and circumstances disclosed by the evidence. The court, overlooking the distinction between confessions of guilt and admissions of mere evidentiary facts not necessarily inconsistent with innocence, erred in charging anything whatever on confessions of guilt. There was no evidence on which to base that element of the charge. What the court said to the jury on the subject was well calculated to prejudice the prisoner, for it might have induced the jury to think that the declarations shown to have been made by him could be treated not only as a part of the material from which an inference of guilt might be drawn, but as a confession of guilt, direct or indirect, made by himself. There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not. This distinction has been pointed out at least twice by this court, and frequently by other courts. *Dumas* v. *The State*, 63 *Ga.* 600; *Covington* v. *The State*, 79 *Ga.* 687; People *v.* Strong, 38 Cal. 151; People *v.* Parton, 49 *Id.* 632; People *v.* Velarde, 59 *Id.* 457; State *v.* Knowles, 48 Iowa, 598; and see 1 Greenleaf on Evidence, §170.

4. With the declarations, the sufficiency of the evidence to uphold a conviction is very doubtful. Without them it would certainly be insufficient. Consequently, the error of the court in charging the jury makes a new trial necessary. True, there have been two previous verdicts of guilty, but a third verdict has no more sanctity than a first, where it is apparent that the result may have been materially influenced by an erroneous charge of the court. Every negro equally with every white person accused of crime is entitled to at least one trial legally conducted By legally, we do not mean punctiliously accurate in point of law, but free from all material error. Under this test this man is as much entitled to be tried a fourth time before he is punished as he would be to be tried once if no previous trial had taken place.　　　　*Judgment reversed.*