## DAVIS *et al. v.* THE STATE.

No error of law was committed, the evidence was sufficient to authorize the verdict, and the newly discovered evidence was entirely of an impeaching nature. There was, therefore, no error in refusing a new trial.

Argued October 22, — Decided November 7, 1901.

Indictment for murder. Before Judge Hart. Laurens superior court. July term, 1901.

*John R. Cooper, W. C. Davis*, and *B. J. Conyers*, for plaintiffs in error. *H. G. Lewis, solicitor-general*, contra.

SIMMONS, C. J.　It appears from the record that Fordham, Davis, Webb, and Haskins were indicted for the offense of murder. Fordham was tried and convicted at one term of the court, and at a subsequent term the others were jointly tried and convicted of voluntary manslaughter. They made a motion for a new trial, con-

taining 41 grounds. Many of these grounds deal with matters trivial in their nature, and are not of sufficient importance to require express mention in this opinion. In several different grounds the same ruling is complained of in different phraseology. After a careful consideration of all of the grounds, we find that the points worthy of discussion may be summed up as follows: (1) That the court charged upon the subject of manslaughter, when the evidence showed that the law of manslaughter was not involved in the case. (2) That the court gave in charge to the jury section 73 of the Penal Code, when the evidence showed that there had been no mutual combat and no mutual intention to fight. (3) That the court charged upon the subject of conspiracy or common intent upon the part of the defendants to kill the deceased, when there was no evidence to warrant such a charge. (4) That the court charged upon the subject of involuntary manslaughter, when the evidence showed that this offense was not involved in the case. (5) That the court gave an erroneous charge with reference to reasonable doubt. (6) That the court refused to give a certain charge as requested. (7) That the court, in the charge, failed to restrict the effect of certain admissions, made by Davis after the homicide, to the defendant making them. (8) That the court failed to charge upon the subject of confessions. The evidence discloses in substance that the four persons indicted, Ben Cannon and Oscar, his son, met on July 4, 1900, at a "commissary" belonging to Fordham, one of the accused. They commenced throwing "crack-a-loo" for cider. This sport continued for some considerable time. The person losing treated the crowd to a quart bottle of cider. When the game was over, Oscar Cannon claimed to have saved a half of a gallon of his portion of the cider, and when he and his father were ready to leave, he placed this cider in his father's buggy. Fordham objected to this, and going to the buggy took the cider out and carried it back into the house. Oscar followed him, and a quarrel and fight ensued between them. Oscar was ready and willing to fight, and declined to discontinue the combat on the advice of his father. In this fight the whole crowd became engaged, the four accused persons taking sides against the two Cannons. The father and son were both knocked down. When the father arose he discovered the four accused persons pursuing Oscar, who seems to have left the house while the father was down. When

the father arrived near the place where Oscar had been overtaken, the latter was being beaten by Webb and Fordham. Haskins threw the father down, and Davis threatened to cut his heart out if he breathed. The father became frightened and left the place. When he returned he found his son in a dying condition. This is, in substance, the testimony of the father. Two other witnesses testified that there was a general fight in which all were engaged, moving from the commissary to the place where the fatal blows were stricken. It was also shown that one of the accused, soon after the fight, remarked, in the presence of the others: "We have killed one d—d Cannon to-day, and . . if [Ben Cannon] comes down here we will get another."

1. Under the facts shown, we think the trial judge was fully justified in giving in charge the law relating to the offense of manslaughter. The jury were authorized to infer from all the evidence that Oscar Cannon and Fordham mutually intended to fight, and that the father espoused the cause of his son while the others took part with Fordham when the fight became general. Fordham and Oscar exchanged blows when Fordham took the cider from the buggy and carried it back into the house. When they fought and the elder Cannon took sides with his son, the others took the part of Fordham and fought the Cannons until Oscar was overpowered and the father became frightened and left. Under such facts the trial judge would not have been warranted in deciding for himself that the law of voluntary manslaughter was not involved in the case, but very properly submitted the question to the jury.

2. It was also contended that it was error to give in charge section 73 of the Penal Code. The assignment of error made in this connection is that there was no evidence of mutual combat or mutual intention to fight and that this code section was therefore inapplicable. We think that even a cursory reading of the above facts will show that the combat was mutual from its inception to its end. There was a mutual fight in the "commissary" between Oscar and Fordham, and subsequently between the two Cannons and the defendants, and, according to the testimony of two of the witnesses, this was continued after the combatants had left the house and until the end. The motion does not complain that this section (73) was given in immediate connection with section 70. If this assignment of error had been made, a different question would.

have been presented. That this was done does not appear from the motion, and we must hold that it was not erroneous to give section 73 in charge to the jury.

3. From the statement of the facts it must be apparent that the jury could find that there was an intent common to these defendants to participate in the fight against the Cannons. Early in the fight Fordham fought with Oscar Cannon, while the other defendants fought with the father. Subsequently the fight became general, the Cannons being pitted against the four defendants. There was, therefore, no error in charging upon the subject of conspiracy and common intent. Counsel for the plaintiffs in error laid great stress, in the argument here, upon the fact that no prearrangement or agreement among the defendants had been shown. We understood his contention to be that, before a conspiracy or common intent could be established, it was necessary for the State to show that such agreement or arrangement had been expressly entered into before the fight was begun, and that, unless this was shown, it was error to charge upon the subject. We think that this contention is not sound. Conspiracy or common intent may be established by proof of acts and conduct as well as of previous express agreement. *Hudgins* v. *State,* 61 *Ga.* 182. It seems to us that taking as true the testimony for the State, the jury was clearly authorized to find that a common intent existed throughout the fight and particularly about the time the mortal blows were given. At that time the elder Cannon, according to his testimony, was knocked down, the four defendants went in pursuit of the son, and, when the father attempted to follow, he was tripped up by Haskins and threatened by Davis, Fordham and Webb in the meantime giving to the son the blows which caused his death. Thus two of the defendants were beating the son while the other two were restraining the father from rendering assistance. If this was true, the acts and conduct of the defendants seem to us to have indicated a common intent. Certainly it was enough to authorize the judge to submit the question to the jury.

4. Whether there was any view of the case in which the jury might have been authorized in finding a verdict of involuntary manslaughter, we need not decide. The jury found the accused guilty of voluntary manslaughter, and the charge as to the lower grade of homicide did not injuriously affect them. *Robinson* v. *State,* 109 *Ga.* 506.

5. Complaint is made that the court erred in charging: "The State is not required to demonstrate with mathematical accuracy and precision the guilt of the accused. The State is bound only to establish their guilt to a reasonable and moral certainty. If .the State has done that, then it is your duty to convict the defendants." This court has decided, in *Bone* v. *State*, 102 *Ga.* 387, that there was no error in giving such a charge after having correctly charged the law of reasonable doubt. . In the present case the part of the charge in connection with which this was given was fuller and clearer than was the charge in the *Bone* case. Indeed, taking as a whole the charge upon this subject, there can be no doubt that the jury must have clearly understood that they could not convict unless the guilt of the accused was established beyond a reasonable doubt.

6. Complaint is also made that the court failed to give in charge without qualification the following written request: " If, upon the entire evidence you should find that there was no combination or joint purpose or action of these defendants with the other, or any of them indicted with him, then the defendants can be only held responsible for what he himself did at that time. And if in any case you should believe, upon the whole evidence, that it is uncertain or doubtful whether the defendants Jesse Webb, Jack Haskins, and Frank Davis, now on trial, or some other one of said defendants, struck the fatal blow upon the deceased, it will be your duty to find the defendants not guilty." It was said by counsel in his argument here that this request was taken literally from the case of State *v.* Westfall, 3 Am. Cr. Rep. 349; that in .that case such a charge was approved by the Supreme Court of Iowa. In that case the request to charge which was approved was as follows: " If, upon the entire evidence, you shall find that there was no combination or joint purpose or action of this defendant with the others, or any of them indicted with him, then the defendant can only be held responsible for what he himself did at that time. And if in such a case you should believe, upon the whole evidence, that it is uncertain or doubtful whether the defendant Benjamin C. Westfall, now on trial, or some other one of said defendants, struck the fatal blow upon the deceased, it will be your duty to find the defendant not guilty." Comparing the request in that case with the one made in this, we find that counsel was mistaken as to having copied it correctly. It is neither a literal nor a substantial copy. Aside from some gram-

matical confusion in applying the request made in the Iowa case to a case in which several defendants were on trial, counsel made his request much broader by substituting the words "in *any* case" for the words "in *such* a case." He sought to apply to any case a principle applicable only to a case where there was no combination or joint purpose or action. This difference is obviously material, and the trial judge did not err in refusing to give the request in charge without qualifying it.

7. According to the evidence of one of the State's witnesses, Fordham and the three present plaintiffs in error went to a picnic after the homicide had been committed. There some one inquired what the trouble was, and Davis replied " We have killed one d — d Cannon to-day and . . if [Ben Cannon] comes down here we will get another." It appears that all four of the defendants were present when this remark was made. The evidence was not objected to, but counsel claimed that the court erred in not confining its effect to Davis; that inasmuch as the homicide had been committed some time prior to the declaration, it could bind only the one who made it. The Civil Code, § 5195, provides that " Acquiescence, or silence when the circumstances require an answer or denial, or other conduct may amount to an admission." When the three others stood by and heard Davis make the declaration that they had killed " one Cannon," it was incumbent upon them, if the statement was not true, to deny it. Inasmuch as they did not deny it, it was competent evidence against them as an admission of participation in the homicide.

8. In another ground of the motion it is alleged that the court erred in not charging the jury upon the subject of confessions, the alleged confession being the admission just above set out. In this the court was right. The words of Davis did not amount to a confession of guilt, and the judge would have erred had he charged upon the subject of confessions. The statement of Davis amounted merely to an incriminating admission. After a careful reading of the entire record, we are of opinion that the evidence authorized the verdict. The same was, therefore, not contrary to law or the evidence.

The last ground of the motion for new trial sets out certain newly discovered evidence. An examination of this evidence shows that it is entirely of an impeaching character, and this court will

not interfere with the refusal of the trial judge to grant a new trial because of such evidence. On the whole we are of opinion that the trial judge did not abuse his discretion in refusing a new trial.

*Judgment affirmed. All the Justices concurring.*