## OWENS v. THE STATE.

1. A conspiracy may be shown by circumstances, and there was sufficient evidence in the record to warrant the charge as to conspiracy.
2. A confession is a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged. A statement which admits the commission of an act, but which also gives legal excuse or justification, is not a confession.
3. It is error to charge upon the subject of confessions where there is no evidence upon which to support the charge.

LAMAR, J. (with whom concurs CANDLER, J.), dissenting.

1. The admission of some incidental fact, not proving but merely tending to show the commission of the offense, will not warrant a charge on the law of confessions.
2. Where, however, the defendant admits the main fact charged, such declaration is not deprived of its character as a confession because coupled with some exculpatory statement.
3. Where on a prosecution for murder the defendant admits a participation in the killing, offering at the same time an exculpatory statement, it is not cause for a new trial that the judge charged on the subject of confessions, there being no complaint of the correctness of the charge as given, or that he failed to instruct the jury that they must consider the declaration as a whole, and might give such weight to the exculpatory matter as they saw proper in view of all the facts and circumstances of the transaction.

Argued April 23,— Decided June 8, 1904.

Indictment for murder.    Before Judge Butt.    Stewart superior court.    March 5, 1904.

Alice Owens and her two sons, Milton and Reece Owens, were jointly indicted for the murder of her husband, their father, Shep Owens.    The defendants severed.    On the trial of Alice Owens there was testimony to show, that, several hours before the homicide, she and her husband had a dispute in the presence of a third person, in which the husband stated to the witness that she had said that she was going to have him killed; to which she replied, "Yes, I did say so.    Your throat ought to be cut."    The deceased, Shep Owens, was in the prime of life, over six feet tall, weighed about two hundred pounds, and was reputed to be courageous and one of the strongest men in the county.    His sons and wife were each much smaller and weaker than he.    The prisoner, in her statement, contended that he had been abusive to her and the family; that when he returned home he made an attack upon his son Milton, and that the latter shot him twice, killing him in self-defense.    No bullet or gunshot wound was found on

the person of the deceased.   There was evidence of a great struggle in the house, blood on the floor, and blood out in the yard where the body was found.   The throat of the deceased was cut; there were six or eight blows on the head, the skull being fractured in several places; he had been stabbed in the back and also through the heart, disemboweled, and the clothing buttoned up, no knife wound showing through the clothes.   There were twenty-eight wounds, many of which would have been mortal, and at least two mortal wounds in the back.   Neither Milton nor Reece was offered as a witness for the defendant.   The defendant admitted that the struggle began in the house between Shep and her son, Milton, but denied seeing the killing, which she said took place out of doors.   There was evidence as to blood-stains upon her clothing.   There was testimony that the morning after the killing, while standing near the body, she stated that "Shep is the cause of it.   If he had behaved — had behaved himself, he would not have been lying there dead.   We had to do it to save ourselves."   She did not say then that Milton killed him.   There was also proof of contradictory statements as to where she was when the killing occurred.   The jury found the defendant guilty with a recommendation to mercy.   The main assignments of error in the motion for a new trial were that the court charged on the subjects of conspiracy and confessions.

*G. Y. Harrell* and *B. F. Harrell,* for plaintiff in error.
*John C. Hart, attorney-general,* and *F. A. Hooper, solicitor-general,* contra.

EVANS, J.   1. The first, second and fifth grounds of the amended motion assign error on the charge of the court on the subject of conspiracy.   Complaint is made that there was no evidence to warrant the charge.   A conspiracy may be shown by circumstances, and there was sufficient evidence in the record upon which to base the charge of defendant conspiring with her sons to take the life of her husband.   The dissected portions complained of may not have been absolutely accurate, but, taken as a whole, the charges fairly submitted the law of conspiracy.   *Davis* v. *State,* 114 *Ga.* 104.

2, 3. Plaintiff in error contends that there was no evidence justifying the charge on the subject of confessions.   It appears

from the record that on the morning after the killing, while standing near the body, defendant stated: "Shep is the cause of it. If he had behaved himself he would not be lying there dead. We had to do it to save ourselves." The judge construed the effect of such statement to be a confession of guilt. "A confession, in criminal law, is a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offence charged, and discloses the circumstances of the act and the share and participation he had in it." Black's Law Dict. This definition of a confession was adopted and approved by the Court of Appeals of Kentucky in Spicer *v.* Commonwealth, 51 S. W. 802. "A confession is a person's admission or declaration of his agency or participation in a crime, and is restricted to admissions of guilt." 3 Am. & Eng. Ency. Law, 439. These definitions of a confession imply an admission of every essential element necessary to establish the crime wherewith the defendant is charged. Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it can not be said to be an admission of guilt. There is a difference between an incriminating statement and a confession of guilt. In the former only one or more facts entering into the criminal act is admitted, while in the latter the entire criminal act is confessed. There are a number of cases in our own reports which clearly draw this distinction. Thus, it is said by Chief Justice Bleckley in *Fletcher's* case: "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not." *Fletcher* v. *State,* 90 *Ga.* 468. To the same effect is *Dumas* v. *State,* 63 *Ga.* 600, and *Covington* v. *State,* 79 *Ga.* 687. "A confession is rather a fact to be proved by evidence than evidence to prove a fact. It is not so much proof that a particular thing took place as it is a waiver by the party charged of his right to have certain facts alleged against him technically proven." Wharton on Crim. Ev. (9th ed.) § 623. This conclusion of Mr. Wharton is in line with the decisions of our own court. The distinction in all of our cases is clearly drawn between the effect of admissions of fact from which the guilt of the accused may be inferred and

the admission of guilt itself.　Incriminating statements, to be the equivalent of a confession of guilt, must be so comprehensive as to include every act necessary to be proved by the prosecution in order to establish the defendant's guilt.　An admission of the main fact, from which the essential elements of the criminal act may be inferred, amounts to an admission of the crime itself.　If the main fact is admitted with a qualifying exclusion of a necessary ingredient of the crime charged, the crime is not confessed. The qualification is a part of the admission, and both must be considered in interpreting the meaning of the statement.　It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same.　*Futch* v. *State*, 90 *Ga.* 480.　A crime consists in something more than the commission of an act.　There must be a union of act and intention.　One may admit that he took a horse from the stable of another and, at the same time, explain that he purchased the horse from a named person claiming to own the horse, and that there was no criminal intent on his part.　If the admission that he took the horse from the stable was without explanation, the intent to steal could be inferred from the act of taking.　But when the taking is claimed to have been in good faith and with no intention to commit a crime, and because of a purchase from one whom, in good faith, he believed to be the true owner, the admission made with such qualification can not mean that he was intending to confess his guilt of the crime of horse-stealing.　An admission of a fact not in itself involving criminal intent is not a confession.·　The term confession is restricted to acknowledgment of guilt, and is not a mere equivalent of words or statements.　People *v.* Parton, 49 Cal. 637; 1 Greenl. Ev., § 170; *Davis* v. *State*, 114 *Ga.* 104; *Simmons* v. *State*, 116 *Ga.* 583.　Murder does not consist merely in the killing of a human being; the killing must be done with malice. When the fact of the killing is shown, and the evidence adduced to establish the killing shows neither circumstances of justification nor alleviation, malice may be inferred.　Likewise, if the statement of the defendant admits the homicide without explanation, malice may be inferred from such admission.　But if at the time of the admission the homicide is justified, such qualification of the admission of the homicide robs it of the vital element of murder.

*Futch* v. *State*, supra.    The statement of the accused amounts to no more than an admission that the deceased was killed by herself and others under such circumstances as made it necessary to save her own life.    No other construction could be given to the language used by her.    "We had to do it to save ourselves" means, that, though we killed the deceased, it was necessary to do it to save our own lives.    If this is a proper interpretation of the language used by her, instead of being a confession of guilt, it was an assertion of innocence; an admission of the homicide, but a claim of complete justification.

It would be a dangerous practice for judges to charge jurors unskilled in weighing evidence that an admission of an act, with a qualification that the act was justifiable, amounted to a confession of guilt, although proper instructions might be given as to the effect of such admission.    To say to the jury that the defendant has confessed to a crime, when the language relied upon was a protestation of innocence, could have no other but the most harmful effect.    A charge upon confessions, where there is no evidence upon which to support such a charge, has been repeatedly held by this court to be error.    *Suddeth* v. *State*, 112 *Ga.* 407 ; *Dumas* v. *State*, 63 *Ga.* 600.

Inasmuch as this defendant will be tried again, we forbear to discuss the effect of the evidence, and reverse the judgment denying a new trial, on the ground that the court erred in charging the jury upon the subject of confessions.

*Judgment reversed.    All the Justices concur, except Lamar and Candler, JJ., who dissent.*

LAMAR, J.    I dissent from the judgment of reversal.    A mother and her sons were indicted for the murder of the husband and father.    They severed.    On the trial of the mother the corpus delicti was proved.    No eye-witnesses to the homicide were introduced.    The real issue from the standpoint of the State was whether the defendant had any part in the commission of the deed.    Besides the proof arising from previous threats and her presence at the time of the killing, it also appeared by evidence that she confessed her participation in the homicide, stating, "We had to do it to save ourselves."    There is no complaint that the judge's charge on the subject of confessions was not a correct statement of the law on that subject; nor that he did not caution

the jury as to the necessity of great care in weighing such evi-
dence; nor that by itself a confession was insufficient to convict;
no assignment of error on a failure to instruct that the jury should
weigh the whole of her statement, and could believe or disbelieve
that which was exculpatory.　Nor is it denied that what the
judge charged would have been equally applicable to admissions,
nor that "admissions" could sustain the verdict as well as con-
fessions.　The judge said nothing about "confessions of guilt,"
under Penal Code, § 1005.　But it is assigned as error that he
charged as to "confessions," when he should only have charged on
the subject of "admissions."　The Penal Code, § 1002, seems to
regard the terms as interchangeable, declaring that "admissions
usually refer to civil cases; confessions to criminal."　And the
books are full of instances in which judges in discussing state-
ments made by the defendant have referred to them as confessions,
though something exculpatory was coupled therewith.　In *Peter-
son's* case (47 *Ga.* 526, 524 (3)), the defendant confessed that he
committed the homicide, alleging at the same time that the de-
ceased had a knife; and this court in referring thereto says, if the
State give in evidence the confessions of the prisoner, he is entitled
to prove all that was said by him in the same conversation.　In
*Licett's* case (23 *Ga.* 57), on an indictment for horse-stealing,
there was evidence that the prisoner said that he "did not steal
the filly" found in his possession, "but traded for her;" and the
court in dealing with the declaration said that "a confession may
be such that the jury will be at liberty to believe a part of it and
to disbelieve a part of it."　In *Johnson* v. *State*, 86 *Ga.* 90, the
court referred to a doubtful or contradictory confession.　In *Myers*
v. *State*, 97 *Ga.* 101, it said, "the entire confession, including any
exculpatory statements which may be connected with it, should
be considered."　See *Long* v. *State*, 22 *Ga.* 40; *Hudgins* v. *State*,
26 *Ga.* 350; *Coney* v. *State*, 90 *Ga.* 142; *Cook* v. *State*, 114 *Ga.*
523; Rex *v.* Clewes, 4 C. & P. 485; Young *v.* State, 2 Yerger,
291; Griswold *v.* State, 24 Wis. 148; Bower *v.* State, 5 Mo. 364;
People *v.* Wyman, 15 Cal. 74; Brown *v.* Com., 9 Leigh, 633;
Bram's case, 168 U. S. 533, 541; State *v.* Porter, 32 Ore. 147.
And the fact that books everywhere lay down the rule that where
a confession is offered the prisoner is entitled to have introduced
the entire conversation, including anything said at the time which

is helpful to him, necessarily implies that statements are not deprived of their character as confessions merely because coupled with exculpatory matter.    Nor is this view opposed to the ruling in *Fletcher* v. *State*, 90 *Ga.* 471, for there the court distinctly points out that there is a marked distinction between the "*main fact*" and "minor facts."    Declarations by the accused as to minor facts forming links in the chain of circumstantial evidence are not confessions, and, if not, of course do not warrant a charge on confessions which ex vi termini relate to the main fact.    These admissions only point to his possible participation in the main fact charged.    They may tend to prove, but they do not necessarily prove, that he did the act set out in the indictment.    Such statements are not an admission of the main fact, but only of "some minor or supporting fact which could be true whether the main fact existed or not."    The admission that one was present when the deed was done is not a confession that he did the act. *Dumas* v. *State*, 63 *Ga.* 600.    An admission explanatory of his possession of goods constituting part of the property which might be considered as the probable fruits of an arson does not necessarily imply that the accused set fire to the house, and therefore did not warrant a charge on confessions. *Fletcher* v. *State*, 90 *Ga.* 471.    An admission of the possession of goods stolen is not a confession of a burglary of the house from which the articles were taken.    *Covington* v. *State*, 79 *Ga.* 687.    See also *Lee* v. *State*, 102 *Ga.* 226; *Suddeth* v. *State*, 112 *Ga.* 407; *Smith* v. *State*, 115 *Ga.* 586.    In *Powell* v. *State*, 101 *Ga.* 18, something beyond what is set out in the published report must have appeared; for it is conceded that the declaration contained not only an admission of the main fact, but in and of itself offered nothing of an exculpatory nature.    So too of *Davis* v. *State*, 114 *Ga.* 109 (7, 8), and *Simmons* v. *State*, 116 *Ga.* 586.    Certainly as little excuse was offered in them as in *Price* v. *State*, 114 *Ga.* 855, where the declarations were treated as confessions.    In Bram's case, 168 U. S. 535, the court applied the law of confessions to a statement by the defendant that a witness "could not see me from there," even though in the same connection he claimed that B., the witness, had done the murder.    This decision is criticized in 1 Greenleaf on Evidence (16 ed.), § 213, where, however, the author evidently recognizes the distinction between an admission of a "minor

fact " tending to show the commission of the offense charged, and an admission of the "main fact," for he defines a confession as " a direct assertion by the accused person of the *doing of the act charged* as a crime." Under this definition he confesses the homicide, the main fact, though it may not be a confession of guilt. To bring the case within the rule of confessions it would not bo necessary for him also to admit the motive, or malice, or to say in so many words that he had committed murder. If so, the law of confessions will rarely, if ever, be applicable on trials for that offense. All confessions are not of the same grade. There may be (1) a plea of guilty, in open court; or (2) an extra judicial acknowledgment of guilt; or (3) an acknowledgment of the commission of the deed, or main fact, from which the law presumes guilt; or (4) an acknowledgment of the commission of the deed, coupled with an excuse which affords no legal defense; or (5) an acknowledgment of the commission of the deed, from which the law presumes guilt, but coupled with an exculpatory statement setting out facts which amount to a legal excuse. In which latter event the jury may believe the confession and disbelieve the exculpatory statement; or they may believe that he did the deed, and also believe that part of the statement which justifies or mitigates. The cases are not absolutely parallel, but it is somewhat analogous to evidence of admissions in a civil case under a plea of confession and avoidance, when the jury may accept the confession and reject the avoidance, or they may believe both and thereupon find for the defendant.

Here the main fact to be proved was the homicide at the time, place, and by the means charged in the indictment. If these facts had been established by the testimony of an eye-witness the State would have made out a prima facie case. The same prima facie case was made out when the defendant confessed the killing and thereby dispensed with other proof of that act. Nor was the character of this evidence changed by the fact that in the same breath which admitted the State's case, the defendant also stated that which amounted to a justification. The confession of the " main fact" did not become any the less so because of the extenuation. The jury might believe the confession, disbelieve the justification, and convict; or, it might believe both and acquit. When she confessed participation in the homicide, it became in-

cumbent on her to remove the burden raised by operation of law out of that confession. It made no difference whether it was called a confession or an admission. Its legal effect was the same. But that its character as a confession was not destroyed by the excuse is recognized in a very convincing opinion of the court in State *v.* Porter, 32 Ore. 147, from which we quote at length, because made after a review of the authorities generally, including the cases from this State. The court says: "The question of the greatest difficulty seems to arise where the admissions are both inculpatory and exculpatory; that is to say, where the acts admitted involve a crime, but a justification or excuse is offered in the same connection. The reasoning of counsel seems to be that, because of the exculpatory matter, there can be no concession of guilt, and hence that the statements or admissions can not amount to a confession. But the concessions of facts which import guilt come first. These are always inculpatory, and it is only when the exculpatory matter is adduced that he is relieved from the onus of guilt which the facts imply. It is not necessary that there should be a declaration of an intent to admit guilt; it is sufficient that the facts admitted involve a crime. . . . . . Exculpatory statements made in the same connection, if believed, may excuse or justify, but do not reduce the declaration from a confession to an admission only. This is in accord with the idea expressed in the books, that confessions must be taken as a whole, and if one part of a conversation is relied upon as proof of a confession of a crime, the prisoner has a right to lay before the court the whole of what was said in that conversation. . . . In any event it is clear that the jury was not misled [by the use of the word 'confession'] in the light of the lucid instructions of the trial judge, when taken as a whole." The same observation is applicable here. The fact that the judge in his charge used the word "confessions" is not sufficient of itself to require the grant of a new trial, especially as it appears that this was a second verdict. The question might have been different if it had been assigned as error that all the proper cautions as to the weight to be given such evidence had been omitted. For wherever the State relies on a confession, coupled with an exculpatory statement, the law, as well as common fairness, requires that the conversation as a whole should be considered, and that the jury should give due consideration to

what the prisoner said in his own behalf. Jurors must be instructed to compare such excuse with the attendant circumstances, and, if they believe the exculpatory matter, to acquit or reduce the grade in accordance with what they find to be the facts. The probative value of a declaration that the defendant did the main fact charged is the same whether called a confession or an admission. There is no complaint that the present charge was lacking in any essential respect, and therefore, in my opinion (in which Candler, J., concurs), the judgment should be affirmed.