## GOODIN *et al. v.* THE STATE.

1. All of the defendants being charged in one count of the indictment with the offense of murder, "for that at said time and place and acting with malice aforethought they did unlawfully kill [A. the deceased] by shooting him with a pistol," and there being evidence to authorize the instructions, the court did not err in charging the jury that if it appeared from the evidence, to their satisfaction and beyond a reasonable doubt, that either of the defendants killed A., by shooting him with a pistol, and the other defendants, acting with a common purpose and in concert with each other, were present aiding and abetting the act to be done, and participating in it, they would be authorized to find that the defendants killed him.

2. Grounds of a motion for a new trial, to the effect that the verdict is contrary to certain specified charges of the court, are equivalent to saying that the jury found contrary to law, and are included in the general ground that the verdict is contrary to law. *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291, *Seaboard Air-Line Railway* v. *Bradley,* 125 *Ga.* 193.

3. Where the trial judge has once in his general charge fully and correctly stated the law of reasonable doubt, it is not necessary that he shall repeat his instructions upon this subject in connection with each new proposition laid down.

4. Where in a prosecution for murder there is some evidence of an altercation and mutual combat between the accused and the deceased, it i⸗ proper to charge section 73 of the Penal Code..

Argued October 16,—Decided November 7, 1906.

Conviction of manslaughter. Before Judge Reagan. Spalding superior court. June 28, 1906.

Landers Goodin, John Wesley Goodin, Arthur Goodin, and Newton Goodin were indicted for the murder of Biles. The indictment contained four counts, and charged each of the defendants, as principal in the first degree, with the commission of the alleged crime; and further charged Landers Goodin as principal in the first degree, and the others as principals in the second degree. Geneva Biles, for the State, testified in substance as follows: The difficulty began at a dance at the home of Biles. Newton Goodin and one Sanson got into a quarrel about their partners, and Goodin cursed Sanson. Biles told them that if they were going to quarrel, they must get out of the house. John Goodin said, "No, they are not; they are going to fight it out right here," and immediately thereafter John, Landers, and Arthur Goodin assaulted Biles and began cutting him. Biles went into an adjoining room and said he was going to get his gun. John, Arthur, and Newton Goodin went out of the house, but Landers stayed in the hall, and said he "was going to kill the damn son of a bitch before he left." Biles got his gun and went out of the house. The Goodins were lined up in the yard. John had a pistol and a knife. Just as Biles reached the ground John Goodin fired. Biles fired next, and then several shots were fired. Witness pulled Biles back into the house, and he fell into witness's arms, saying, "They have killed me. Landers Goodin has shot me through the heart." Biles was shot in the side, and died in a few moments. Other witnesses for the State corroborated the material parts of this testimony, and testified further that all four of the Goodins were shooting when Biles was hit. Clements, for the defendant, testified in .substance as follows: The first I saw of the difficulty, Newton Goodin and Sanson had a fuss. Biles caught Newton and was choking him. John Goodin pulled Biles off Newton, and told him not to do that. Biles struck John Goodin, and told him that if he did not leave there "he would settle with him." John and Newton Goodin went out of the house and were going away. Biles got his gun and fol-

lowed them. When he reached the porch, he asked where was John Goodin, and said he was going to kill him (Goodin). He then shot at John Goodin. This was the first shot fired. Putnam shot Landers Goodin. Defendants in their statements corroborated the material parts of the above testimony, and further stated that John Goodin fired the shot that killed Biles. John Goodin was shot in the head, and Landers Goodin was shot in the neck. There was much other conflicting testimony. The jury found John, Landers, and Newton Goodin guilty of voluntary manslaughter, and acquitted Arthur Goodin. Error is assigned on the refusal to grant a new trial.

*J. J. Flynt* and *T. E. Patterson,* for plaintiffs in error.

*O. H. B. Bloodworth, solicitor-general, W. P. Bloodworth,* and *J. W. Shell,* contra.

BECK, J. (After stating the foregoing facts.) 1-3. The principles of law announced in the first three headnotes need no elaboration.

4. The court did not err, as will at once appear from a careful reading of the evidence, in giving in charge to the jury section 73 of the Penal Code, and in charging the law of voluntary manslaughter. The altercation and difficulty which resulted in the fatal shooting of the deceased began in his house. According to evidence for the State, one of the defendants there had an altercation with a third party. The deceased interfered and said, "If you are going to fuss, you must get out of doors," to which another one of the defendants replied with an oath, "No, they are not; they are going to fight it out right there. Just move them chairs; I will kill him." Immediately others of the defendants stabbed the deceased; upon which he turned and went into another room, saying that they had cut him and he was going to get his gun; came out of the room, went out of the house, and, when he got out, armed and prepared for combat. "They [the defendants] were lined up. John Goodin was between some buggies at the edge of the road, and said, 'By God, I aint done nothing to leave here for.' And Arthur [Goodin] was next, and Newt [Goodin] was next, and Lander [Landers Goodin] back, and went down to the edge of the porch to the east end; and when we [witness and deceased] got out, we didn't hardly get on the ground, and John Goodin fired, and Tony [the deceased] fired, and then there were several shots fired. . . When

we came in the house Tony fell in my arms and said, 'They have killed me; Landers Goodin has shot me through the heart.'" Another witness for the State testified, "Landa [Landers Goodin] had a knife in his hand at the time. They got after Landa to get him to move out of the house. He said that he wouldn't do it, that he came there to kill the damn son of a bitch, and he wasn't going to leave till he was killed. He stood in the hall a while; and when he said that, Tony [the deceased] said that he would get out, and he got his gun and went out of doors. Then the shooting taken place. John Goodin fired. Tony Biles fired." When this evidence is considered together with that set out in the statement of facts, it is manifest that it was a question for the jury to decide whether or not the fatal rencounter had in it the elements of mutual combat. Certainly the evidence authorized the finding that it had. That being true, it follows that the judge did not err in charging upon the subject of mutual combat; and it is equally plain that in charging the law of voluntary manslaughter he was only doing that which was required under the issues made by the testimony in the case. *Glover* v. *State*, 105 *Ga.* 597. *Davis* v. *State*, 114 *Ga.* 104.

*Judgment affirmed. All the Justices concur.*