## 30106. LUMPKIN v. AMERICAN SURETY COMPANY.

Decided September 29, 1943.

888

892

896

*James Maddox,* for plaintiff.

*Barry Wright, Carlton Wright,* for defendant.

GARDNER, J. The contentions presented revolve around two main issues: first, the nature and extent of the alleged shortages; second, the sufficiency of the assignment and subrogation by the bank to the plaintiff.

1. Special grounds 3 and 15 of the motion for new trial are expressly abandoned. Special grounds 1, 2, 4, 5, 8, 11, and 14 assign errors going to the first issue as to the extent and nature of the shortage. Ground 1 objects to testimony of the cashier con-

cerning the teller's scratch sheet. Ground 2 objects to testimony of the cashier with reference to the account of the Southern Brighton Mills concerning the item of $14,035, on the contention that the witness had not been shown to be an expert. Ground 4 complains because the cashier (after he had testified that he had direct charge of the bookkeeping department of the National City Bank, and that the entries were made under his supervision and direction) was permitted to testify that he had traced "out" the item of $14035, over objection that this was a conclusion of the witness. Ground 5 complains because the court permitted the cashier to testify that he made an analysis of the books the last part of 1938, and the defendant's cash showed a net overage, over objection that the bank books were not in court. Ground 8 complains because a question was asked the witness Daniell, treasurer of the Southern Brighton Mills, whether his bank statement was either short or over, because the account itself was not offered, and any answer would be a conclusion. Ground 11 complains of the reception in evidence of the ledger of the National City Bank showing the account of Southern Brighton Mills from January 3, 1939, through February 23, 1939, on the ground that the ledger was secondary evidence, being made up from deposit slips and checks which were available. Ground 14 complains of the admission, over objection, of the ledger sheets of the National City Bank showing the account of the Southern Brighton Mills, from May 18, 1938, through September 9, 1938, because no testimony had been introduced to show that the accounts were correctly kept, or by whom kept, and no checks or deposit slips had been offered in evidence in connection therewith. When we consider these objections as specified in the grounds set forth above, in the light of the reflection of the whole record, we find no cause for reversal in any or all of them, for any of the reasons assigned. On the issue now under consideration as to the nature and extent of the alleged shortage, it will be noted from the statement of facts above that the alleged shortage consisted of three items, one of $129.92; another of $14035; and another of $90. We will deal with them in the order named.

The undisputed evidence shows that on January 26 the defendant as teller of the bank was entrusted with a certain amount of cash. At the close of the day's business he was short $129.92. He

was called to check it. This he did, and found no error in the charge against him. It is clear that this item was proved beyond question as a liability against him. As to the item of $14035, this was discovered by the officials of the bank on January 29, 1939. On the evening of January 31 of the same year, in the presence of the cashier, Mr. Palmer, a director, Mr. Graham, and W. S. Cothran, vice-president, the defendant confessed that over a period of two years he had been looting the bank of its funds, and that on January 26, 1939, he made the false entry on his teller's sheet of $14035, in an effort to cover up his shortages. He further admitted that no one else was connected with the theft. All of this appears undenied in the record. Moreover, when he was overtaken in his misdeeds, it is not denied that he made an effort to prevail upon the cashier to assist him to further conceal his shortages. In addition to the confession, he was indicted in three counts for making false entries in the bank's records, to conceal his embezzlement of $14035. These counts, as will be observed by reference thereto, detailed the manner and purpose for which the false entries were made. He entered a plea of guilty to each count, and was sentenced to two and a half years under each count, the sentences to run concurrently.

It is strenuously urged by able counsel for the defendant that these pleas of guilty are of little, if any, probative value against the defendant in the present case, for the reason that the criminal charges were for making false entries, and not for embezzlement. To this reasoning we can not agree. It is true that embezzlement is a separate and distinct crime from that of making false entries for the purpose of concealing embezzlement (which the defendant confessed) ; yet from the record of this case it is clear that a confession of the false entries as set out in the indictment, taken in connection with the confession to the officers of the bank, along with the records, is conclusive evidence of embezzlement on the part of the defendant. As to the pleas of guilty and admissions and confessions of guilt, all of which are involved in the record of this case, we call attention to the following authorities: 31 C.J.S. 1070: Admission by defendant in a criminal case may be competent as judicial admission, against him, in a civil action involving the same subject-matter. Rosencranz v. Tidrington, 193 Ind. 472 (141 N. E. 58, 28 A. L. R. 1136) : A plea of guilty, in a Federal

court, is competent as an admission in a civil action in a state court. 22 C.J.S. 1452: A plea of guilty, knowingly and voluntarily made by accused, is admissible against him as a confession. *Groves* v. *State*, 76 *Ga.* 808: A plea of guilty stands upon the same footing as a conviction by a jury. It has the same force and effect. State *v.* Call, 100 Me. 403 (61 Atl. 833): A "plea of guilty" in a court is a confession of the crime charged in the indictment. State *v.* Branner, 149 N. C. 559 (63 S. E. 169, 170): A "plea of guilty" differs from a voluntary confession, in that, while the latter is mere evidence of guilty, the former is a formal confession before the Court on which judgment may be rendered. *Bishop* v. *State*, 21 *Ga. App.* 236 (94 S. E. 49): A plea of guilty is applicable to all and to each of the counts of the indictment. 31 C.J.S. 1031: Oral admissions of a party are competent evidence against him. 22 C.J.S. 1422: A confession may consist of a series of questions and answers. *Owens* v. *State*, 120 *Ga.* 296, 301 (48 S. E. 21): The terms "admissions" and "confessions" are interchangeable. And also, in the same case, the probative value of a declaration that the defendant did the main fact charged is the same whether called a confession or an admission. 22 C.J.S. 1422, citing *Simmons* v. *State*, 181 *Ga.* 761 (184 S. E. 291): A confession may consist of a series of questions and answers. Code, § 38-401: "Admissions usually refer to civil cases; confessions to criminal."

The nature and extent of the shortage (in so far as the items of $129.92 and $14035 are concerned) were clearly proved beyond doubt. The court did not err in directing the verdict as to these two items.

So far as the item of $90 is concerned, the evidence did not demand a verdict in favor of the plaintiff. The only evidence to prove this item was from the bookkeeper and the cashier. Neither of them testified that the defendant was responsible for the shortage of this item. It was shown that he received the money from Mr. Horton and wrote up a deposit slip, but as to what became of the money, the witness in charge of the savings department testified that the defendant, when questioned concerning the item, stated that he gave the money and the original deposit slip to Mr. Palmer; that the defendant did not get it and did not propose to make it up. This was the contention of the defendant until he left the

bank. The cashier testified that he did not have any distinct recollection of the defendant having turned the money over to him, that he did not remember it, but the defendant could have done so in the rush of business; and the witness, having something else stuck under his nose, might not have observed it. The direction of the verdict as to this item was error.

2. If we are correct in the conclusion reached in the first division of this opinion (and as to this we have no doubt), it necessarily follows that the defendant is liable in a civil action to some one in the amount of money which he wrongfully obtained. There can be no doubt of his civil liability to the bank. Neither can there be any doubt that the assignment by the bank to the plaintiff, as alleged in the petition, is a good and valid assignment by the bank of its claim against the defendant to the plaintiff. This question was decided when the case was before this court on exceptions to the overruling of the demurrer. *Lumpkin* v. *American Surety Company*, 61 *Ga. App.* 777 (7 S. E. 2d, 867). On this question the court ruled: "Under the Code, §§ 85-1803, 85-1805, a right of action for damage to property, or a right of action or chose in action arising from tort which involves, directly or indirectly, a right of property, is assignable. [See citations]. The right of the bank to recover of the employee, on account of his alleged wrongful acts in taking the money of the bank is a right to recover for injury involving the bank's property right in the money. The form of an assignment of a chose in action is immaterial. It is sufficient if it is in writing and manifests the intention of the owner to transfer to the assignee his title to the chose in action. The assignment by the bank of its claim against the defendant contained a description of the various alleged thefts and dishonest acts of the employee. The assignment operated to pass to the plaintiff the title to the right of action of the bank against the employee. The petition stated a cause of action and none of the grounds of special demurrer were meritorious. The trial court properly overruled the demurrer on all the grounds." Thus it remains only to determine whether the evidence as to the assignment was sufficient to sustain the allegation of the petition.

Grounds 6, 7, 9, 10, 12, and 13 assign errors going to the second issue involving the sufficiency of the proof of the assignment and subrogation by the bank to the plaintiff. Before discussing these assignments it might be well for us to discuss the question gener-

ally. There are two kinds of subrogation, legal and conventional. This case presents one of conventional subrogation based on the written contract of assignment. The contract of assignment and the proof of it is clear to the effect that it was the intention of the National City Bank of Rome to transfer and assign to the plaintiff whatever right of action the bank had by reason of the defalcation of the defendant. And it should make no difference with the defendant, if he owes the money, to whom he should pay, if he be assured that he will not have to pay twice. There can be no other difference to him, under the facts of this case. It can not be seriously contended that the plaintiff did not issue to the bank a "banker's blanket bond" to indemnify the bank against a misappropriation of its funds by its employees. It can not seriously be contended that the premium was not paid. It can not seriously be contended that the full amount of the claim for $14154.92 was not paid to the bank as the amount misappropriated by the defendant. It can not seriously be contended that the plaintiff paid this amount, conditioned, in part at least, on the assignment of the claim to the plaintiff. In studying this record it is inconceivable that any doubt could be entertained by any one that it was not the intention, as expressed in the itemized claim and its assignment by the bank, to transfer all of the bank's rights in the three items to the plaintiff. While there is reference in the claim to a bond, under the facts of this case the bond thus mentioned is not a material and controlling factor in the assignment. The gist of the assignment which comes at the bottom of the statement of the claim is as to the items which go to make up the amount of the claim. The following contains the germane portions of the assignment: "That the insured does hereby assign and subrogate to the American Surety Company of New York any and all rights in and to each and every item of loss for which the said American Surety Company of New York shall pay, and it is understood that the said American Surety Company of New York, at its sole discretion and at its own cost and expense, may enforce all rights, claims, and demands by suit, if necessary, in the name of the insured or in its own name. That the insured has caused these presents to be executed for the purpose of inducing the American Surety Company of New York to accept liability and to pay claim as asserted."

It will be observed from the statement of facts that the claim and assignments contained in one instrument purported to be executed

for the bank by its vice-president, W. S. Cothran, and attested by a notary public. When this assignment was offered in evidence the defendant objected to it on the ground that its execution had not been properly proved. Thereupon the court, over objection, permitted the cashier to testify that he saw the vice-president sign the paper, and that it was the signature of the vice-president. Under the facts of this case, and taken in connection with other evidence, this was not reversible error. Here we have the cashier, Mr. Palmer, and the director, Mr. Graham, officers of the bank, giving the court and the jury, apparently as best they could, the truth of the transaction, in order that the plaintiff might obtain a judgment for the amount of money which it paid the bank for the shortage of the defendant. Under such circumstances, if there were irregularities in the proof of the execution of the assignment, the only party who would be concerned in such irregularities would be the bank. The bank, having received the money under the assignment, would be estopped to deny its validity. Certainly under the facts of this case it is of no concern of the defendant to whom he pays the money he owes, provided he is protected in such payment. The main objection was that neither the subscribing witness nor the vice-president was produced or his absence accounted for, and that the proof was secondary. It was ruled in *Fletcher* v. *Young,* 10 *Ga. App.* 183 (2) (73 S. E. 38): "The admission of secondary evidence is generally not ground for reversal, where otherwise there is sufficient legal evidence in proof of the fact to which the secondary evidence relates." It was ruled in *Lee* v. *Holman,* 52 *Ga. App.* 543, 544 (183 S. E. 837): "Conventional subrogation depends upon a lawful contract, and occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights and remedies of the creditor so paid."

In view of what we have said, the assignments of error as specified in grounds 6 and 7 on the admission in evidence of the two bonds over objection, ground 9 objecting to the admission of the claim of the National City Bank on the American Surety Company for $14154.92, ground 10 objecting to the admission of the canceled voucher of the plaintiff to the bank in payment of the defendant's shortage, ground 12 objecting to admission of one of the bonds, and ground 13 objecting to the admission of the bond, are all without merit and show no ground for reversal.

The court did not err in overruling the motion for a new trial for any reason assigned, except as to the item of $90. The judgment is affirmed on condition that the item of $90 be written off the amount of the recovery within ten days after the remittitur is filed in the court below. Otherwise the judgment is reversed.

*Judgment affirmed, with direction. Broyles, C. J., and MacIntyre, J., concur.*