Taylor and Taylor vs. Smith.

16   7<br>112   411

No. 2.—SAMUEL TAYLOR and SARAH TAYLOR, plaintiffs in error, vs. BENJAMIN B. SMITH, defendant in error.

[1.] The reputation of witnesses among their neighbors, for truth, is impeached. The testimony of witnesses, to the effect that they are acquainted with the character of the impeached witnesses for truth in their neighborhood, and that from this acquaintance thus derived, they would believe those witnesses on their oath, although as they said, they had never heard that character spoken of, is then received. And the Court charges the Jury that they may weigh this testimony, in their estimate of the credibility of the impeached witnesses : Held, that this charge is not erroneous.

[2.] A motion to amend, made after " a case has gone to the Jury," ought, on payment of costs by the movant, to be allowed, unless the party opposing the motion " will state on oath," or his Attorney at Law will " state in his place," that such party will be " taken by surprise," and will be " less prepared for trial in consequence of the amendment" if allowed.

Slander, in Twiggs Superior Court.  Motion for a new trial. Decided by Judge HARDEMAN, September Term, 1853.

Benjamin B. Smith brought his action of slander in Twiggs Superior Court, against Samuel Taylor and wife, returnable to the September Term, 1850, for words spoken by the latter.

The declaration charges that the words were spoken on the first day of May, 1850, and were as follows : "that plaintiff kept Mrs. Louisa P. Lynch and gave her the c**p."

The defendants filed the plea of the general issue.

The cause was carried to the appeal by consent, and continued once thereafter by the defendants.

On the trial, the plaintiff proved the speaking of the words, on the evening of the 26th day of December, 1849, by two witnesses, Mrs. and Miss Melton.  It also appeared in evidence, from the testimony of the Clerk, that the declaration was filed in Court *some* two or three weeks before the process bears date.

The defendants then read in evidence the evidence of Mrs. Vann, taken by interrogatories, going to impeach the character of Mrs. and Miss Melton for "truth and veracity."  Plaintiff sustained character of witnesses.  Defendants, at this point, moved to amend their defence, by filing the plea of Statute of Limitations.  The Court refused the motion.  The defendants then swore James Taylor, (son of defendants) who testified that he was present at his father's, when Mrs. and Miss Melton were there at supper on the 23d or 24th of December, 1849; he never saw them there on an evening afterwards—he heard no conversation in his presence about Mr. Smith."

The cause was then submitted to the Jury, and the Court, among other things, charged "that the fact that one has lived a long time in the neighborhood, and is well acquainted with the person whose good faith is sought to be assailed, and has never heard their truth questioned, is evidence which the Jury may weigh in their estimate of credibility."

The Jury found a verdict in favor of plaintiff for $2,750.

Whereupon, Counsel for defendants moved the Court for a new trial, on the grounds—

Taylor and Taylor *vs.* Smith.

1st. Because the Court erred in charging the Jury as above set forth.

2d. Because, from the exorbitant amount of the damages, the Court must conclude that the Jury acted from passion, partiality or mistake.

3d. Because the Jury found contrary to law and evidence.

4th. Because the Court erred in not allowing the defendants to file the plea of the Statute of Limitations.

The Court (Judge HARDEMAN presiding) over-ruled the motion for a new trial, and Counsel for defendants excepted.

COLE & POE for plaintiffs in error.

WHITTLE and I. L. HARRIS for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

A witness of the defendant's swore of two witnesses that had been examined by the plaintiff, as follows: "From the knowledge I have of their character in the neighborhood, for truth and veracity, I should weigh their evidence, in a Court of Justice, with a considerable degree of allowance."

This testimony says, in effect, that the two witnesses bore in their neighborhood, a reputation for truth which was not good.

To rebut it, the plaintiff examined two witnesses, who swore that they were acquainted with the character of the two impeached witnesses, for truth, in the neighborhood in which those witnesses lived, and that from their knowledge thus derived, they would believe those two witnesses on their oath, in a Court of Justice: but these two supporting witnesses also swore that they had never heard any thing for or against the truth of the two impeached witnesses—that they had never heard the question of such truth raised among their neighbors.

The effect of this testimony was certainly, to some extent, to rebut the testimony of the impeaching witnesses. It says at least as much as this: that if the character of the impeached witnesses was not good, they, the supporting witnesses, had

XVI—2

never heard that it was not; and if it were true that it was not, they were such persons as would probably have heard of it: for they swear that they are acquainted with that character, although they never heard it spoken of; meaning, perhaps, to have it understood that they derive that acquaintance from the sort of respect and consideration with which those witnesses were treated by their neighbors.

And certainly the sort of silent respect and consideration with which one is treated and received by those who know him, is some index of what they think of him as a man of veracity. And, indeed, if he is a person whom they think very highly of, this is about the only index. The character for truth, of such a person, is never discussed—questioned—"spoken of." To discuss, question, or even, perhaps, to speak of one's reputation for truth, is to admit that two opinions are possible on the point. Suppose the question were, what was the character of Washington, among his neighbors for truth, could the answer be any thing but this? I never heard it questioned, discussed, spoken of; and yet, I know it to have been the most exalted.

This testimony, then, for the purpose of rebuttal, if for no other purpose, was well received. And whatever rebuts impeaching testimony, may, of course, be weighed by the Jury, in estimating the credibility of the impeached testimony.

[1.] The charge which is assigned as erroneous, was in substance, no more than that the Jury might weigh the testimony for such a purpose; and was, therefore, in the opinion of this Court, not erroneous.

After the defendants had delivered evidence to the Jury, they moved to amend their answer, by adding a plea of the Statute of Limitations. The Court over-ruled the motion, "because (in the language of the Court) no cause is shown in excuse of its not being filed before—the testimony on which it is sought to be placed, having been in Court for a long while, as seen from entries on interrogatories." There is no other reason assigned for the decision. It does not appear that any other existed. Therefore, it does not appear that the plaintiff stated "on oath," or that his Attorney "stated in his place,"

Taylor and Taylor *vs.* Smith.

that he would be " taken by surprise," and would be " less pre-
pared for trial in consequence of the amendment," should the
amendment be allowed.   For aught that appears to the con-
trary, the plaintiff, at the time when the motion to file the new
plea was made, was as ready to meet that plea as he would or
could have been, had the plea been filed at the earliest moment
at which it could be filed.   And, therefore, for aught that ap-
pears to the contrary, the filing of the plea (if it had been filed)
at that late time, would have done the plaintiff no more harm
than would have the filing of it at the earliest possible time.
This being so, every reason that exists for allowing the plea to
have been pleaded at the earliest time, exists for allowing it to
have been pleaded at the late—unless there is some positive
command of the law, which prescribes the one time rather than
the other.

Is there any such a command ?   That, therefore, is the ques-
tion.

The fith Common Law Rule of Court is as follows: " When
an appeal is entered, either of the parties litigant may make
any amendment of the declaration or answer they may deem
necessary.   The party amending, shall give notice thereof in
writing, accompanied by a copy of the amendment to the ad-
verse party, three months previous to the next term after the
appeal; and if the party amending fail to give such notice, and
the adverse party will state on oath, or the Attorney at Law
state in his place, that he is taken by surprise, and is less pre-
pared for trial, in consequence of the amendment, the cause
shall be continued at the instance of the amending party."

By this rule, a defendant may amend his answer on the ap-
peal, at any stage of the case before verdict, subject to the con-
tingency of having a continuance charged against him, if he so
does.   A license so broad as this, is manifestly capable of
abuse to the injury of plaintiffs; to the delay of Court business;
and to the infliction of unnecessary labor upon Court and Jury.

To prevent such abuse, probably another rule was adopted
—the fifty-third.   That, among others, contains the following
words : " Exceptions to the declaration or answer shall be tak-

en before the case is submitted to the Jury, either at Common Law or on the appeal—and in no case shall the declaration or answer be amended in matters of substance, after the case has gone to the Jury, except at the discretion of the Court, and upon payment of costs."

By this rule, after a case has gone to the Jury, whether either side of it can be amended or not, on payment of costs, is committed to the discretion of the Court. But even when discretionary power is given, the intention, it may be assumed is, that the power is at some time to be exercised. And what better time can be assumed, as one intended, than a time at which the exercise of the power will create no surprise—produce no delay, expense, vexation—do no legal harm to the one side, while it will or may do legal good to the other.

If this be so, then the time when the defendant in this case applied for leave to amend his answer, was a time at which the discretionary power of the Court to allow the amendment, should have been exercised. For it does not appear that the amendment, if made, would have surprised the plaintiff, or done him other legal harm, while it does appear that it might have done the defendant some good, as he had testimony which the Jury might have considered supportive of the plea.

[2.] So we think the amendment should have been allowed.

My own opinion is, that not only should it have been allowed under these two rules of Court, but also that it should have been, under the Act of 1818, (*Pr. Dig.* 442) of which the first section is as follows: "That in every case where there is a good and legal cause of action plainly and distinctly set forth in the petition, and there is in substance a copy served on the defendant or defendants, or left at their most notorious place of abode, every other objection shall be, on motion, amended without delay or additional costs." I understand this Act to apply to the defendant's side of a case, as well as to the plaintiffs. The words " every other objection" is broad enough for that—and the preamble shows the defendant's side of the case to have been in the mind of the Legislator equally with the plaintiff's. These words are, in the preamble, "*Parties*, Clerks

and Sheriffs." Not only the omissions of both parties, but those also of "Clerks and Sheriffs" were in the mind of the Legislator, and were equally provided for in the body of the Act.