## SUDDETH v. THE STATE.

112   407
115   586

112   407
120   300
120   302

112   407
124    10

1. When in the trial of a criminal case there is no evidence of a confession of guilt, but simply evidence of an admission of a fact which might tend to criminate, it is error to give in charge to the jury the law in reference to confessions of guilt.
2. When in such a trial there is evidence from which the jury could find that one of the witnesses for the State was an accomplice, as well as evidence from which they could find that he was not, it is proper to leave to their determination the question as to whether the witness was or was not an accomplice under the evidence ; but they should be distinctly informed as to what is necessary to constitute one an accomplice.
3. It is error requiring the granting of a new trial for the judge to express or intimate an opinion as to what has or has not been proved.
4. When a witness has been attacked as unworthy of credit, on account of general bad character, and a witness called to sustain him testifies that his character is bad, but that, notwithstanding this fact, he would believe him on oath, the jury should be allowed to consider this evidence in determining what credit is to be given the attacked witness.

Argued December 17, — Decided December 19, 1900.

Indictment for robbery. Before Judge Janes. Douglas superior court. ' October 30, 1900.

G. H. Thompson, driving home in his buggy about eight o'clock at night, was stopped by two men in the road, knocked senseless, and robbed of his money. At the trial of George Suddeth for this offense, Calvin Hunter appeared as a witness for the State, and testified, in substance, that Suddeth committed the crime in his presence but without his participation. Hunter was the first one arrested therefor. Among the other testimony it appeared that Suddeth said, at a party on the same night, that " George Thompson was robbed over at the hill, and they got betwixt thirty and thirty-five dollars, and he [Suddeth] was good for part of it." When he was arrested he asked the officer if he had arrested Hunter, and received an affirmative answer. He said he was afraid Hunter would put it all on him, and asked the officer if he could find out. The officer went out, returned, and told Suddeth it was all put on him. Suddeth asked if a compromise could be got up, said he would pay back the money if they would turn him footloose, and proposed to the officer to go home and get the money. They went, but he did not get the money, and afterwards said he did not have it. While at home he talked with his uncle. He introduced

testimony to prove his good character, an alibi, the bad character of Hunter, etc. Among the grounds of his motion for a new trial was an assignment of error on the giving in charge of the law of confessions. The court was requested to give the following in charge, and error was assigned on the failure so to do: "An accomplice is one who is associated with another in the perpetration of a crime. If you believe that Calvin Hunter is shown by the evidence to be an accomplice in this case, then you can not convict the defendant on his testimony, unless his testimony is corroborated by circumstances connected with the perpetration of the offense.' The charge as given covered the last sentence, but gave no direct definition of an accomplice.

The other material facts appear in the opinion.

*W. A. James*, for plaintiff in error.
*W. T. Roberts, solicitor-general*, contra.

COBB, J. Suddeth was placed on trial upon an indictment charging him with the offense of robbery, and was convicted. His motion for a new trial having been overruled, he excepted.

1. In *Fletcher* v. *State*, 90 *Ga.* 468, the distinction between a confession of guilt and an incriminating admission of a minor fact was clearly drawn. In the opinion Mr. Chief Justice Bleckley said: "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not. This distinction has been pointed out at least twice by this court, and frequently by other courts." The cases decided by this court, referred to in the last sentence of the foregoing quotation, are *Dumas* v. *State*, 63 *Ga.* 600, and *Covington* v. *State*, 79 *Ga.* 687. In the *Dumas* case it was held that when the accused had made no confession of guilt but had simply admitted the existence of a fact which might, in one view of the case, tend to incriminate, but which was still, in another view, consistent with innocence, it was error to charge the law with reference to confessions. That ruling has been steadfastly adhered to by this court. See *Jones* v. *State*, 65 *Ga.* 147; *Covington* v. *State*, supra; *Fletcher* v. *State*, supra; *Powell* v. *State*, 101 *Ga.* 10 (4); *Lee* v. *State*, 102 *Ga.* 221 (2), 224. A careful examination of the evidence in the present case fails to disclose anything which would be the equivalent of a confession of guilt. The

admissions relied on as a confession, taken in the most unfavorable light for the accused, would amount to nothing more than admissions that he was in possession of a portion of the property which was the subject-matter of the robbery. While his possession of the same would be a circumstance indicating guilt, it would not be entirely inconsistent with innocence. It was error, therefore, to give in charge to the jury the law relating to confessions of guilt.

2. Calvin Hunter, a witness for the State, testified that he was present at the scene of the crime and saw it committed, but that he had no connection therewith. There was some evidence tending to show that he was a guilty participant. The judge charged the jury the law regarding the testimony of an accomplice, and then charged them that it was for them, under the evidence, to determine whether Hunter was an accomplice; but failed to distinctly charge what would or would not constitute an accomplice. We think it was error to refuse to give in charge a request distinctly defining an accomplice.

3. The court charged the jury as follows: "Now, you are to determine, gentlemen, whether or not he is an accomplice [Hunter, the witness]. He denies having anything to do with the commission of this offense himself; he states that he had nothing to do with it, and was not an accomplice." The code declares that the judge in his charge to the jury must not "express or intimate his opinion as to what has or has not been proved" (Civil Code, § 4334), and a violation of this rule imperatively demands the grant of a new trial, under the very terms of the section. A statement by the court as to what a witness has testified has been construed to be an intimation or expression of opinion as to what has been proved, within the meaning of this section. *Davis* v. *State*, 91 *Ga.* 167 (2); *McVicker* v. *Conkle*, 96 *Ga.* 584 (3), 596. Following the ruling made in these two cases, the charge now under consideration was erroneous.

4. Several witnesses called by the accused testified that they were acquainted with the general character of Hunter, that that character was bad, and that they would not believe him on oath in a court of justice. There were witnesses called by the State, who testified that they were acquainted with the general character of Hunter, that that character was bad, but that, notwithstanding this fact, they would believe him on oath. Counsel for the accused reques-

ted the court to charge, in substance, that, while a witness who had been impeached by proof of general bad character might be sustained by proof of good character, he could not be sustained by a witness who testified that his character was bad, but that, notwithstanding this fact, he would believe him on oath. The code, after providing that a witness may be impeached as to his general bad character, and declaring the manner in which such impeaching witness should be examined, that is, he should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath, provides: "The witness may be sustained by similar proof of character." Civil Code, § 5293. By similar proof of character is evidently meant good character; and therefore, in order for a witness to be sustained in the manner indicated by the section of the code above referred to, it would be necessary for the sustaining witness to testify that the character of the witness attacked was good. This being true, the question arises, what effect is the jury authorized to give to the testimony of a witness who says that while the character of another witness is bad, still he would believe him on oath; in other words, that while the general moral character of the witness might be bad and the witness called to sustain him would, if truthful, be compelled so to state, still, in the opinion of the witness, this character was not the result of any acts which would affect his veracity, and therefore that, while of a bad character in a general sense, he might be a truthful man. Certainly the jury would be allowed to consider the fact that the witness would believe him on oath, notwithstanding he admitted that his character was bad. While in such a case the attacked witness could not be said to have been sustained by proof of general good character, still at the same time it would be for the jury to determine what weight should be given to the testimony of the witness who testified that, notwithstanding the bad character of the witness attacked, he believed him to be a man of veracity. The code distinctly provides that three questions shall be asked the impeaching as well as the sustaining witness, the last question in each instance being whether the person whose credit is attacked is worthy of belief. If the jury are to determine alone the question of credibility from the character as testified to by the witnesses, then the third question seems to be entirely unnecessary,

and worse than useless, for the simple reason that it would bring into the case a matter that would be irrelevant. As the question is not only allowed but required to be asked, the jury should be permitted to consider the answer when it is made. If the character under investigation were limited to character for truth and veracity, there would be no necessity for the third question. While the rule in regard to what is the character proper to be investigated when a witness is attacked, or, after having been attacked, is sought to be sustained, is not uniform in all jurisdictions, under our law the investigation is not limited to the character for truth and veracity alone, but takes in the entire moral character of the witness, made up from all sources. Such being the case, the third question is absolutely necessary to make the investigation complete. While it would not be proper for the court to charge the jury that such evidence either sustained or did not sustain the attacked witness, the jury should be instructed that they may weigh this testimony in estimating the credibility of the witness attacked. See *Taylor* v. *Smith*, 16 *Ga.* 7. See also, in this connection, Rapalje's Law of Witnesses, § 197; Clackner v. State, 33 Ind. 412; Hamilton v. People, 29 Mich. 173, 185; Stape v. People, 85 N. Y. 390.

The foregoing deals with all of the questions arising in the present record which we consider of sufficient importance to discuss at length. There were numerous other assignments of error, but none of them would have required the granting of a new trial. While the language of the judge in certain portions of his charge was probably subject to the criticism made by counsel, the inaccuracies were such only as would be likely to creep into an oral charge, and upon another trial these inaccuracies will doubtless not occur.

*Judgment reversed. All concurring, except Fish, J., absent.*