920.   WATERS *v.* THE STATE.

1. There is some evidence to support the verdict. and this court can not interfere with the discretion of the trial judge in refusing a new trial on the general grounds.

2. Where exceptions are made in the motion for a new trial to alleged errors of the court in refusing to exclude certain testimony, the testimony which was admitted must be set out, and it must also be shown what objections were interposed to the admission of this testimony, as well as the grounds of such objections; otherwise, such exceptions will not be considered by this court.

3. The exception made to the charge of the court, as contained in the 4th ground of the amended motion for a new trial, is fully controlled by the decision of this court in *Rouse* v. *State*, 2 *Ga. App.* 184 (58 S. E. 416), and the decisions in *McVicker* v. *Conkle*, 96 *Ga.* 597 (24 S. E. 23), *Thomas* v. *State*, 95 *Ga.* 484 (22 S. E. 315), *Davis* v. *State*, 91 *Ga.* 167 (17 S. E. 292), and *Suddeth* v. *State*, 112 *Ga.* 409 (37 S. E. 747).

Indictment for burglary, from Harris superior court—Judge Martin.   November 23, 1907.

Argued February 3,—Decided February 14, 1908.

*Henry C. Cameron,* for plaintiff in error.

*S. P. Gilbert, solicitor-general,* contra.

HILL, C. J. Isham Waters was convicted on an indictment charging him with the crime of burglary. He made a motion for a new trial, on the general grounds, and on four special grounds. The first three special grounds are based upon alleged errors in the ruling of the court in refusing to exclude certain testimony introduced by the State. The 4th special ground assigns error in the following charge to the jury: "The State insists that it has connected this defendant with the criminal act. They insist that this was a burglary, and that they have shown this by circumstantial evidence which connects this defendant with the criminal act; and they insist that they show it by circumstances. The State further contends that about the day the house was broken open and entered, the defendant was in that neighborhood, and that he had an opportunity to have committed the act; that he was afterwards seen with a gun, a parasol, and bundle of clothes, which they contend were such as were taken from that house. They also contend that he was afterwards found in possession of the suit of clothes, which they contend was the property of John Mc-Crary, the person whose house they insist was burglarized. These are some of the circumstances relied upon by the State." It was insisted that this was an improper and an unfair summing up of the testimony for the State, and was an expression of opinion by the court as to what had been proved by the State. The evidence for the State showed, that the dwelling-house of the prosecutor had been burglarized on the 15th of July, in the daytime, somewhere between sunup and dinner time; that at the time of the burglary there were stolen from the house a double-barrel breech-loader, a suit of clothes, three dollars in money, a plug of tobacco, and a razor; that on the morning of the burglary the defendant left the residence of one Beech, about a mile from the scene of the crime, and went in the direction of the prosecutor's house; that on the same day he was seen by two other witnesses, about eight miles distant from the prosecutor's house, traveling the public road and going in the opposite direction from said house, having in his possession a breech-loader, a parasol, and a bundle under his arm. Over a month after the commission of the offense, a coat and a vest were found in the house where the defendant and his wife lived, and this coat and vest were identified by the prosecutor as his property, and as having been in his house when it

was burglarized and at that time taken therefrom. The defendant introduced no evidence. In his statement to the jury he admitted, that he was in the neighborhood where the prosecutor lived, about the time of the alleged burglary; that he had a bundle of clothes in his possession, and a breech-loading gun, which he borrowed from one Ben Caldwell. The bundle of clothes, he said, consisted of the coat and the vest which were afterwards found at his house, and which were claimed by the prosecutor; and he stated that he had witnesses to prove where he got the coat and vest from, but that he could not secure their attendance at court, as they had gone off on the railroad and he was not able to locate them.

1. An analysis of the evidence substantially stated above shows that it was entirely circumstantial, and not very strong in its incriminating character; but we can not say that there was not some evidence in support of the verdict. Therefore, the discretion of the trial judge in refusing a new trial on the general grounds will not be disturbed.

2. The first three special grounds of the amended motion, which assign error in the refusal to exclude certain testimony, do not disclose that any objection was interposed at the trial to the admission of this testimony; nor is there any reason now assigned why the testimony was not admissible. For these reasons we can not consider these assignments.

3. The 4th ground of the amended motion, which assigns error in the summing up by the court of the facts relied upon by the State to establish guilt, is well taken. The charge of the court falls clearly within the ruling of this court in *Rouse* v. *State*, 2 *Ga. App.* 184 (58 S. E. 416), and numerous decisions of the Supreme Court. In *McVicker* v. *Conkle*, 96 *Ga.* 597 (24 S. E. 28), it is said that, "in the courts of this State, juries, and not judges, sum up the evidence." It will be seen, by reference to the charge objected to, that the judge undertook to sum up to the jury all the facts and circumstances relied upon by the State to prove the guilt of the accused, and, at the end of his summing up, expressly stated to the jury that "these are some of the circumstances relied upon by the State." This summing up by the court was argumentative in character, and tended to call to the attention of the jury, and to enforce upon their consideration, the incriminating character of the various facts and inferences which were narrated,

and as indicative of the defendant's guilt. As was said in *Sud-deth* v. *State,* 112 *Ga.* 409 (37 S. E. 747), and by this court in *Rouse* v. *State,* supra, the injurious effect of this summing up by the court is not at all diminished by the use of such expressions as, "the State insists," "it is contended by the State," etc. It will also be seen by reference to the evidence, and the facts and circumstances to which the court referred in the summing up, as "some of the circumstances relied upon by the State," that the court (unintentionally, of course) unfairly stated some of the alleged facts and circumstances; in other words, that the court did not state the facts and circumstances exactly as proved, but rather stated the construction which the State, in its contention, placed upon such evidence. The only fact in controversy was the complicity of the defendant in the burglary, and the only evidence of such complicity was the circumstances that on the day of the burglary in the morning the defendant left the house where he had spent the night and went in the direction of the prosecutor's house, and that subsequently on the same day he was seen about eight or ten miles on the public road going in the opposite direction from the house of the prosecutor, and had a breech-loading gun, a parasol, and a bundle, and that over a month thereafter a coat and a vest which the prosecutor identified as belonging to him, and as having been in his house at the time of the burglary, were found in the defendant's house, where he lived with his wife. The defendant, in his statement, attempted to explain to the jury his possession of the clothes and the gun. Surely it was not fair for the court to sum up the inferences of guilt which the jury might draw from these circumstances, without at the same time calling the attention of the jury to the explanation of these incriminating circumstances, which the defendant had given in his statement. This explanation, if the jury believed it, was entirely consistent with innocence; and if the court undertook to sum up the circumstances indicating guilt, it surely was incumbent upon the court also to sum up the corresponding circumstances which indicated innocence.

We think also that the last sentence of this charge,—"these are some of the circumstances relied upon by the State,"—was a clear intimation by the court that such circumstances were proved, and, for that reason, was a violation of section 4334 of the Civil Code.

"A statement by the court as to what a witness has testified has been construed to be an intimation or expression of opinion as to what has been proved, within the meaning of §4334." See *Davis* v. *State*, 91 *Ga.* 167 (17 S. E. 292), *Suddeth* v. *State*, supra, and *McVicker*, v. *Conkle*, supra. The court in this expression went much further than the mere statement that the witnesses had testified to circumstances which he had enumerated, but he declared, without qualification, that these, alluding to the circumstances he had enumerated, are some of the circumstances (not testified to or proved by the witnesses) relied upon by the State. We would not be understood as holding that the trial court has no right to state the contentions of the parties and the issues, but he must state such contentions and issues fairly and impartially, without an opportunity for the jury to gather from his statement any leaning to one side rather than to the other. We do not think, however, that it is ever fairly within the scope of the court's prerogative to sum up the facts and circumstances testified to by the witnesses. This duty the law of this State imposes upon the jury, and the court can safely leave the performance of such duty where the law places it.

We feel, therefore, constrained to grant a new trial in this case, because we think that the learned trial judge erred as herein pointed out.     *Judgment reversed.*