### 1875.   BROWN v. THE STATE.

It is no valid objection to a charge of the court that it presents the issues of the case vividly and graphically, if it is fair, is not argumentative, does not sum up the testimony, and does not express or intimate any opinion as to what has or has not been proved.

Indictment for arson, from Columbia superior court—Judge Hammond. April 16, 1909.

Argued May 19,—Decided June 15, 1909.

*Pierce Brothers,* for plaintiff in error.

*J. S. Reynolds, solicitor-general, John M. Graham,* contra.

POWELL, J. Brown was convicted of arson, and to the overruling of his motion for a new trial he brings error. In addition to the general grounds he specifically assigns error upon the following charge of the judge to the jury: "The State contends, that on the 6th day of last December, in this county, on a plantation belonging to Judge E. H. Callaway, known as the Mays place, there resided an old darkey by the name of Brandon Gordon, with his family; that near his dwelling-house was located his stable and his barn, in which he had his mule, wagon, buggy, and some fodder and some corn; that about daybreak on Sunday morning, the 6th day of December, he was awakened by a light coming between the boards in his house; that he and his family arose, and soon afterwards his neighbors assembled around his barn and stable which was being consumed by fire, and that the flames had gone to such extent as to make it impossible for him to save his mule, wagon, corn, and forage stored therein; that his property was destroyed. The State contends, that it was through a human agency that the said barn was set upon fire, that it was not an accident; that the time of day, and the fact that some parties who went to a certain place in reference to the burning detected the odor of kerosene, establish what is known in law as the corpus delicti, that is, that there was a crime committed. The State contends that the defendant had a motive and an incentive to commit this crime; that he had been last year (1908) a tenant on Judge Callaway's place; that there was some trouble between him and his landlord as to his working and payment of amounts due by him; that he had been removed from the plantation; and that his property had been levied upon, and that the crops that he had formerly planted and tended were turned over to this old darkey Gordon, whose stable and barn was burned. The State contends that the defendant had a feeling of vindictiveness against Gordon and against this brother tenant of his, who had been put in charge of his property, and to whom it is claimed he attributed his troubles with his landlord. The State contends that the defendant made threats,

on various occasions, as to what he would do by way of having vengeance upon the prosecutor in this case, Gordon. The State contends that in furtherance of that malicious motive and purpose on his part, he committed this act. The State contends, that it has submitted testimony tending to show that the tracks leading from that burning went in the direction of the defendant's house, and led up toward his house; that those tracks were first made with a shoe of a certain character; that, at a certain point in the course of the tracks, the party making the tracks stopped and took his shoes off and then walked in bare feet for a distance; that he went down to the creek and attempted to jump across the creek; but it was too far, and he went back and crossed at another point; that after making a considerable number of tracks with bare feet, he replaced his shoes. The State contends that the tracks, upon comparison with the bare foot of the defendant, showed a close resemblance to his feet, if not identical with it. The State contends that these various circumstances, taken together with the alleged threats, show that the house was burned by human agency, and that the defendant at the bar was the man who burned it."

In order that the matter may be clearly understood, we deem it proper to complete the context from which this excerpt is taken. To the foregoing language the judge added the following: "Now, gentlemen of the jury, the defendant denies that. He contends, that he had no motive for burning the house; that he had no hard feeling against his landlord, nor against this man Gordon; that, while he had no property, he was able to go into the field and make an honest living, as he had done before; that he had no ill feeling against Gordon, and that Gordon had done nothing to provoke such feeling. He contends that he went back on the place to get two guinea-fowls that belonged to him, and that he took his gun and shot them; that at the time he and Gordon had a very pleasant talk, and he invited him to come to his house, and he said he would meet him at church and be as good friends as they had ever been. The defendant claims, that, with a negro named Malord, he went that night down to Richmond county, and was not near the fire, and knows nothing about it. He says he never made any threats, and that these parties misrepresented him in their testimony. He contends, that, as to those tracks, he said at the time, 'You see, gentlemen, I can't make a track of that

sort;' and he asked somebody to take off his shoe, his hands being tied, and that he put his foot in the track, and it did not correspond at all. He says he is absolutely innocent. He contends that he has established the affirmative defense that he was not there and did not commit the crime charged against him. Now, gentlemen of the jury, in stating these contentions to you, I do it only that you may the better apply the principles of law which I have given you in charge, and without meaning to say that I have recalled all of the many contentions in the case, or that I have stated them in the order of their importance. The duty rests upon you to remember the testimony, and to draw such inferences and conclusions from the testimony as men, acting under their oaths, can properly do. It is not my purpose to intrude upon your prerogative in determining the facts in this case. I give you the law in charge, and you are to decide what the facts are, and then return a verdict of guilty or not guilty."

The following objections are taken to the instruction complained of: "That it was argumentative and calculated to impress the jury that the testimony introduced in behalf of the State was entitled to more weight and credit than that introduced in behalf of the defense—defendant's statement; that it militated against the defendant, in that it was such a sympathetic and graphic portrayal of the old darkey's loss and damage, couched in such fascinating and tragic language, as was calculated to dissipate the dispassionate equanimity of the jury, and gave a greater weight in the estimation of the jury to the testimony for the State; that it was such a summary as the jury could not have accepted it other than as an expression of an opinion upon the proven facts, the court nowhere throughout the entire summary having disclaimed to the jury any intention of expressing an opinion upon the proven facts." Two other minor exceptions are in the record, but they are clearly not well taken.

The evidence is sufficient to support the verdict, and there is no reason for reversing the judgment of the court overruling the motion for a new trial, unless the exception to the foregoing portion of the charge is well taken. "The office of a charge by the court is to give to the jury such instruction, touching the rules of law pertinent to the issues involved in the pending trial, as will enable them intelligently to apply thereto the evidence submitted, and

from the two constituents law and fact make a verdict. In delivering his charge the trial judge should carefully avoid an invasion of the province of the jury. He should refer to the evidence only so far as is necessary to present the leading issues of the cause, leaving the minor contentions of opposing counsel to the consideration of the jury under appropriate general instructions. It should contain no such summary of ·the evidence as might to a jury seem either to be an argument or amount to the expression or intimation of an opinion thereon." *Thomas* v. *State,* 95 *Ga.* 484 (22 S. E. 315); *Nelson* v. *State,* 124 *Ga.* 8 (52 S. E. 20). In the case first cited it was held error for the trial judge to repeat to the jury the substance of the testimony of the State's witnesses and submit this, together with argumentative deductions therefrom, as issues in the case. It is further stated in the *Nelson* case, supra, and in *McVicker* v. *Conkle,* 96 *Ga.* 597 (24 S. E. 23), that the judge should not recapitulate in detail the testimony of the witnesses in such a way as is likely to leave the impression on their minds that the testimony of a particular witness is to have more credit than that of another witness or any other evidence in the case. In *Suddeth* v. *State,* 112 *Ga.* 409 (37 S. E. 747), it is held to be reversible error for the judge to state to the jury what a particular witness has testified toward the establishment of a particular issue in the case. The charge must not be argumentative. It is not saved from error by the use of such phrases and expressions as "the State contends," or "it is contended," etc. *Smith* v. *Hazlehurst,* 122 *Ga.* 792 (50 S. E. 917). Upon the subject generally see *Rouse* v. *State,* 2 *Ga. App.* 184 (58 S. E. 416); *Butler* v. *State,* 2 *Ga. App.* 397 (58 S. E. 685); *Waters* v. *State,* 3 *Ga. App.* 649 (60 S. E. 335); *Scott* v. *State,* 4 *Ga. App.* 73 (60 S. E. 803).

When the charge excepted to is viewed in connection with its context, which is also set out above, it will be seen that it is not argumentative, and that it does not stress the State's contentions to the exclusion of those of the defendant, but that the contentions of both are fairly and accurately presented; that it was not such a summary of the testimony as to convey the impression that the judge was expressing an opinion on the facts proved in the case. It was a very fair presentation, not of the testimony, but of the issues raised by the testimony. It draws the issues clearly and

correctly, but it makes no reference to the particular testimony by which these issues are supported. We concede the insistence that it is graphic, but we do not concede that it is erroneous for the judge to charge the jury graphically. It is a rare faculty to be able to array the leading issues of a long trial before the jury graphically and vividly, without violating some of those rules which have been built up to keep the judge from encroaching upon the province of the jury; but Judge Hammond seems to be one of the few men who can do so, and this power is to his credit as a trial judge, and not to his discredit. But even one of his ability in this respect should keep himself under the closest surveillance, lest he by inadvertance step over the sharply drawn border line beyond which no judge can tread. See *Sharpton* v. *State*, 1 *Ga. App.* 542 (57 S. E. 929). The charge before us, with all its vividness and clearness of expression, comes clearly up to the rule laid down in the *Thomas* case, supra: "He should refer to the evidence only so far as is necessary to present the leading issues of the cause, leaving the minor contentions of opposing counsel to the consideration of the jury under appropriate general instructions." The excerpt from the charge, taken as a whole, is not subject to the exceptions taken to it. *City and Suburban Ry.* v. *Findley*, 76 *Ga.* 311 (3); *Whitlow* v. *State*, 74 *Ga.* 819 (3); *Elder* v. *Cozart*, 59 *Ga.* 200          *Judgment affirmed.*