70459. TAYLOR v. THE STATE.
(336 SE2d 832)

BEASLEY, Judge.

Defendant appeals his conviction for the offense of child molestation.

1. (a) Did the state fail to establish venue? The victim, a 6-year-old child, was kept by the defendant's mother Mrs. Jenkins at her home while the child's mother worked. The mother testified that Mrs. Jenkins lived on "Route 1 . . . going towards Douglas." When asked "is that inside the county line" she responded "I think so." The victim indicated that the defendant "bothered" her while at Mrs. Jenkins' home. A witness related he had a business located "West on 32, Alma" and Mrs. Jenkins lived about a block away. Mrs. Jenkins stated she resided in Bacon County on Highway 32 and that on August 15, 1983 (the day of the alleged incident) she sat on the front porch with the kids "all the time" defendant was there.

Circumstantial, as well as direct evidence, may be used to establish venue. *Loftin v. State,* 230 Ga. 92, 94 (2) (195 SE2d 402) (1973). Where there is no conflicting evidence, slight evidence is sufficient. *Aldridge v. State,* 236 Ga. 773, 774 (1) (225 SE2d 421) (1976). Since venue is a question for the jury, its decision will not be set aside if there is any evidence to support it. *Alderman v. State,* 241 Ga. 496, 509 (5) (246 SE2d 642) (1978). Accord *Jones v. State,* 245 Ga. 592, 596 (2) (266 SE2d 201) (1980).

Here as in *McCord v. State,* 248 Ga. 765, 766 (285 SE2d 724) (1982), the showing that the Jenkins residence was in Bacon County and that the acts complained of occurred there would enable the jury to reasonably find venue in Bacon County.

(b) The indictment alleged the offense occurred on August 15, 1983. Did the evidence fail to show this?

The proof, viewed in its entirety, clearly demonstrated that the offense occurred on this date. There was evidence that the offense was committed on August 15 "of this year," the case having been tried in 1983. The child was taken to the doctor on the same day she was molested and the doctor testified as to her visit on August 15, 1983. The defendant's mother, testifying on his behalf, related her actions and the events of August 15, 1983.

All of that aside, "[w]here the date alleged in the indictment is not a material element of the offense, the state may prove the offense as of any date within the statute of limitation." *Arnold v. State,* 167 Ga. App. 720 (1) (307 SE2d 526) (1983). The offense was clearly

shown to have been within four years. *McCord v. State*, 248 Ga. 765, 766, supra.

(c) Was there a fatal variance between the allegations and the proof?

The rule that the allegations and proof must correspond is based on the requirements "(1) that the accused shall be definitely informed as to the charges against him so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." *Dobbs v. State*, 235 Ga. 800, 802 (3) (221 SE2d 576) (1976); *McCrary v. State*, 252 Ga. 521, 523 (314 SE2d 662) (1984).

Defendant has not specified the variance complained of, and nothing appears which would subject defendant to the possibility of either danger.

(d) Was the evidence sufficient so that a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt? Yes.

2. Did the court err in failing to charge on good character? Although defendant contends there was evidence of his good character and the trial court should have charged on that principle, he made no written request. Nor did he ask for it when he had an opportunity to think about it overnight and the court recharged the jury the next morning at its request on some other matters. Then when the court solicited exceptions to the charge, he had none and did not reserve the right to later raise any. *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980); *Morton v. State*, 168 Ga. App. 18, 20 (4) (308 SE2d 41) (1983).

Barring exceptional circumstances there must be a written request to charge on principles of law regarding good character; otherwise the failure to do so will not require a new trial. *Braddy v. State*, 172 Ga. App. 386, 388 (2) (323 SE2d 219) (1984); *Spear v. State*, 230 Ga. 74, 76 (195 SE2d 397) (1973).

It is argued there were exceptional circumstances here warranting a new trial just as in *Seymour v. State*, 102 Ga. 803 (30 SE 263) (1897). In that case, however, the Supreme Court granted a new trial pursuant to a statutory power "which we rarely exercise but which, in our judgment, was intended to meet just such cases as the present." Id. at 806. What was of concern to the court and gave the case its exceptional quality were two factors. One was that the sole evidence of rape was the girl's testimony which, "after a careful and deliberate study of," the court considered to be "at most, a very weak and unsatisfactory case against the accused. . . ." The second was that good character was the sole defense. Those dual factors, under the particular circumstances of that case, is what led the court to "feel" that the accused did not have a fair trial.

The coexistence of the two factors there and the "peculiar circumstances" of the case were recognized as explaining the *Seymour* reversal in *Wright v. State*, 93 Ga. App. 542 (92 SE2d 229) (1956), and *Riceman v. State*, 166 Ga. App. 825, 826 (1) (305 SE2d 595) (1983).

Here, however, those factors do not exist so as to require an exception to the application of the general rule. The testimony of the child was corroborated by the res gestae nature of the child's report to the mother, the examining doctor's findings and opinion, and the other child's similar experience at the hand of defendant. The evidence was not "weak and unsatisfactory." As to the second factor, good character was not the sole defense. In addition to relying on his general reputation in the community to create a reasonable doubt that he *would* commit such an act, defendant offered evidence of the sheer unlikelihood that he did such a thing. This matter was submitted through the testimony of the mothers of a number of other little girls he would have had the same access to and who never indicated any molesting by him. In addition, he denied committing a criminal act, stating both that he did not violate her as alleged at all and that if he did touch her, it was in innocent play and not with any criminal intent. Finally, the defense included the theory that if she was injured, it was caused by something or someone other than defendant. Thus, there is no reason to conclude that this is an exceptional case requiring the treatment given *Seymour*. See *Riceman v. State*, supra.

3. Did the court err "in sustaining the State's objection to, and instructing the jury to disregard, the testimony of Mary Harrell relative to the good character of defendant?"

As stated above, the defense was that the child was not telling the truth, that defendant did not touch the little girl at all, and that if he did while playing with the children in a normal way, it was innocent and not with the specific criminal intent of arousing and satisfying his sexual desires. Thus, if she was injured, it was from some cause other than himself. He sought to prove this by bringing in the mothers of other young girls who were regularly in the care of his mother during his frequent visits there. From these three witnesses, each of whom had several children, he elicited that none ever had any trouble relating to defendant, thus inferring that he never criminally molested their young daughters and raising the inference that it was therefore unbelievable he committed a criminal act on the alleged victim. He also produced Ms. Harrell, the woman he was then living with and with whom he had lived for the past three years and had known for five or six years. She testified that her two young daughters lived with them, that she never had any bad reports from her children about his behavior towards them either at home or when they were being kept at his mothers, where he often went, and that she would

not hesitate leaving them there.

Defendant did not attempt to prove his reputation for good general character in the community through the three mothers but did broach that subject with Ms. Harrell. However, he did not address the subject in the manner provided by law. He asked whether she knew his character, which she answered affirmatively, and he asked if his character was good or bad, which she answered "Good." On cross-examination it was reiterated that *she* was saying it was good, that it was her opinion, which she defended by saying he had never been in any trouble. When asked whether that was what "everybody says about him in the community," she said she did not know. The state moved to strike her testimony concerning good character because it was her opinion of his character and not the opinion of the community, i.e., she had not testified about his reputation. Defense counsel, on the other hand, argued that she should be able to give *her* opinion of his character because it was based not only on her own observations but also on what she gathered from others while living with him in the community. The court struck the testimony as to defendant's character and instructed the jury to disregard it, explaining to counsel that this was not the proper way to prove good character. The court offered guidance: "The character of a defendant is not established by her own personal knowledge. It's established by general reputation in the community." Defense counsel took the cue and conducted redirect examination of Ms. Harrell on this subject and did elicit from her that she never heard any of the people he works with or who come to the house or whom he sees at the store "say anything bad about him. They've always respected him." Then, however, counsel again focused on her personal opinion. "Q. Based upon that, do you have an opinion as to whether his character is good or bad? A. Yes, sir. I feel like if I didn't think it was, I wouldn't be living with him. Q. Well, what is that opinion, that it's good or bad? A. It's good. Q. Thank you." Upon motion, the court struck this testimony, again explaining that she could not give her personal opinion. Defense counsel noted that he still believed she could give *her* opinion of his character, so long as it was based in part on her contacts with others in the community who knew him. No error was committed by the court. As repeated in *Simpkins v. State*, 149 Ga. App. 763, 764-765 (256 SE2d 63) (1979): " ' "The rule is clear. The witness can't testify what he knows of (the defendant's) character; it's his reputation that is admissible — what the public says of a man." ' *Paschal v. State*, 30 Ga. App. 22 (3) (116 SE 899) . . . '(D)irect examination to prove the character of the accused must be limited to questions concerning his general reputation in the community in which he lives.' *Overby v. State*, 125 Ga. App. 759, 760 (188 SE2d 910)." Instruction has been given: "[T]he rule in Georgia is that good character may be proved only by testimony of a

witness as to the reputation of the person whose character is in issue . . . [s]ubject to minor exceptions, the opinion of a witness as to character based on personal observation is not an approved way of introducing evidence of character." *Waters v. State*, 248 Ga. 355, 366 (5) (283 SE2d 238) (1981); *Franklin v. State*, 251 Ga. 77, 80 (303 SE2d 22) (1983). As succinctly stated in Green, Ga. Law of Evidence (2nd ed.), § 66: "If moral character (e.g., general character . . .) is to be used to prove conduct, the only evidence admissible is testimony as to the person's reputation."

Here the court was correct. The personal opinion of Ms. Harrell, that is, what *she* thought of the character of defendant, was not admissible. Under Georgia law, the opinion of the witness as to the defendant's true character, whether he is in fact a "good" or "bad" person, is regarded as irrelevant when what is sought to be proved is a person's "character." That is because it is his reputation in the community which is regarded as best establishing what that actual and intrinsic character is and thus what *one* person (the witness) thinks of him does not show what his reputation in the community is even though that person's sole private opinion constitutes a contributing part, i.e., one vote, in the composite of personal opinions which comprise the person's standing or reputation in the community.

The confusion exists, and apparently existed here from defendant's perspective, because the law too readily equates and too often interchanges the words "character" and "reputation." See, e.g., *Clark v. State*, 52 Ga. App. 254 (183 SE 92) (1935): "[C]haracter in our legal parlance has the same meaning as reputation; that is, what one's fellows say about him." See also Daniel, Ga. Crim. Trial Prac. (1984 ed.), § 21-14. But a person's character is the sum or qualities or features by which he is distinguished from others; his essential peculiarity, his nature. His character is the aggregate of distinctive mental and moral qualities belonging to that individual, the stamp of individuality impressed by nature, education, habit, experience. What a person's actual character is can arguably best be described by the person himself, as only he knows his unexpressed thoughts, his private actions, and insofar as it is knowable, his real motivations. But the law recognizes that his own testimony in this respect is self-serving and likely to be biased when he is testifying about it as a person accused of crime. Thus the law casts about for another source of evidence as to a person's character. It looks to what other people, who have a basis for knowing the defendant, think his character is. It rejects the opinion of individuals because of a myriad of undetectable influences on that one person which will in all probability give a skewed perspective and a narrow view. It accepts instead the congregate opinion, the collective opinion of the many who have dealt with the defendant directly or gained knowledge of him indirectly. It is this corporate body of

observations and experience that constitutes reputation and which the law is satisfied will be the most accurate evidence that can be produced as to a person's true character. As attributed to Abbott: "In truth, character is what a person is; reputation is what he is supposed to be." Webster's New Intl. Dictionary, 2nd edition, Unabridged.

We must remember that we are dealing with juries, conveying information to them, and that they will not understand or construe testimony in a legal construct, giving a "legal parlance" meaning to words used by ordinary lay witnesses. And we must remember that we are dealing with ordinary lay witnesses, whose understanding of questions asked and whose own words in answer will not include a translation into legal connotation or an application of legalistic veneer. Thus, when Ms. Harrell was asked and answered what *her* opinion was of defendant's character, she was being asked and showed by her answer that she understood she was being asked, what *she* thought of him. She was not asked, nor did she give, her opinion of what his reputation in the community was, i.e., what the community thought of him. Except in one instance during the course of her testimony, when she said: "Well, I've never heard them (people he worked with, came to his house, or saw him at the store) say anything bad about him. They've always respected him." That would be permissible because it relates to his reputation; the fact that nothing bad is said about a person in the community is recognized as evidence that a person has a good reputation and therefore is of good character. *Taylor v. Smith*, 16 Ga. 7, 9 (1854); *Hodgkins v. State*, 89 Ga. 761, 762 (1) (15 SE 695) (1892); *Powell v. State*, 101 Ga. 9 (1) (29 SE 309) (1897); *Gravitt v. State*, 220 Ga. 781, 786 (8) (141 SE2d 893) (1965). But as made clear by the court in its ruling, what was objectionable and not to be considered by the jury was the personal opinion of the witness.

Later, as a matter of fact, defendant produced another witness who was solely called to testify as to defendant's good character. A man who had a business one block from the child care business of defendant's mother testified that he knew defendant all of his (defendant's) life, had the opportunity to talk with others who knew defendant, knew his reputation in the community, and that based on all of this, "His character is good, [e]verybody that I've talked with says he's a good character." Upon cross-examination, this was explored and reinforced. Thus, evidence of good character was before the jury and the effects of the confusion with regard to the earlier attempts to establish good reputation through the woman he lived with were diminished and relegated to minor significance. Besides, the state never challenged the fact that defendant had a good general reputation and never sought to establish that he had a bad general reputation.

4. Did the trial court err in overruling defendant's objection to a question posed to the victim's mother (Mrs. Waters)? The state

asked: "[W]hy did you stop taking [the victim] to Mrs. Jenkins' house on that date?" Although objection to the question was overruled, the state's attorney rephrased the question before it was answered and the response was made to that second question in this manner: "Q. Mrs. Waters, please explain why you removed your daughter from Mrs. Jenkins' care after the 15th? What happened on the 15th? A. On the 15th, the day I picked her up, that's the day she told me that D. L. Taylor had messed with her." Thereupon, objection was interposed by defendant and overruled.

(a) The state contends, as it did in the lower court, that the testimony was admissible to explain conduct under OCGA § 24-3-2.

In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) the Supreme Court pronounced: "To prevent an overly broad interpretation of Code § 38-302, we adopt the following: When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct." This rule of law has been followed in several Supreme Court decisions and then was "restated and reaffirmed" in *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984).

Here the evidence proffered related to the date of the offense (an issue raised on appeal by defendant), as to the fact that the child reported the incident and explained the reason for the visit to the doctor. It would appear that these are matters which are relevant and concerning which the truth must be found. See in this connection *Barnes v. State*, 171 Ga. App. 478, 480 (320 SE2d 597) (1984).

(b) However, even if this were not so, this was the first occasion the child had to report the molestation to someone she trusted. Statements made by a victim need not be "immediate" in order to constitute part of the res gestae as defined in OCGA § 24-3-3. " 'In determining whether a statement is a part of the res gestae it must . . . be determined whether it is subject to the objection of afterthought. In ascertaining this the time between the occurrence and the statement, the circumstances under which the statement was made, and the character of the statement itself are all matters to be considered. No arbitrary time can be fixed which will settle the question. . . . And while as a general rule that which is mere narrative is apt to carry with it the impress of afterthought, there may be a narrative which is entirely free from afterthought. . . . So declarations must be contemporaneous with the main fact, but need not be precisely concurrent in point of time[;] it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design.' " *Nasworthy v. State*, 169 Ga. App. 603, 604 (2) (314 SE2d 446) (1984). Accord *Turner v.*

*State*, 212 Ga. 199, 200 (91 SE2d 501) (1956) wherein it was held: "No precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed."

In *Wallace v. State*, 151 Ga. App. 171, 173 (259 SE2d 172) (1979), we found that it is not "error to admit the statement of a child made to her mother shortly after an assault occurs when it is the child's first opportunity to report the offense outside the presence of the perpetrator." The concept of permitting statements made to others at the first opportunity by victims of sexual assaults and molestation has been recognized in a host of cases. See, e.g., *Johnson v. State*, 142 Ga. App. 560 (236 SE2d 552) (1977); *Walls v. State*, 166 Ga. App. 503, 505 (3) (304 SE2d 547) (1983); *Clark v. State*, 167 Ga. App. 259 (2) (306 SE2d 60) (1983); *Samples v. State*, 169 Ga. App. 605, 606 (3) (314 SE2d 448) (1984); *Overton v. State*, 230 Ga. 830, 836 (5) (199 SE2d 205) (1973); *Price v. State*, 233 Ga. 332, 334 (2) (211 SE2d 290) (1974); *Tucker v. State*, 243 Ga. 683, 684 (3) (256 SE2d 365) (1979).

Our Supreme Court has recently enunciated more liberal standards for appraising whether statements fall within the parameters of res gestae. *Andrews v. State*, 249 Ga. 223 (290 SE2d 71) (1982).

(c) Even where statements were not so closely related to the event as to constitute part of the res gestae, this court has found the mother's rendition of what her child told her, where also testified to by the child, does not constitute reversible error. *Kerr v. State*, 154 Ga. App. 470 (2) (268 SE2d 762) (1980); *Lively v. State*, 157 Ga. App. 419 (4) (278 SE2d 67) (1981); *Phillips v. State*, 173 Ga. App. 396, 397 (3) (326 SE2d 775) (1985).

The admission of the testimony complained of does not constitute a ground for reversal.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 28, 1985.

*Thomas H. Pittman*, for appellant.

*Harry D. Dixon, Jr., District Attorney, George Barnhill, Assistant District Attorney*, for appellee.