### 74112. GODFREY v. THE STATE.
(358 SE2d 264)

BIRDSONG, Chief Judge.

The appellant Earl Godfrey was convicted by a jury of aggravated sodomy upon his step-grandson. The offense was committed around Thanksgiving when appellant took the boy to his property to look for a Christmas tree. When the boy and his mother returned to their home, that night the mother heard the boy talking in his sleep, which was not an unusual occurrence. She went to his room and saw him tossing and turning, and according to her statement, "He was begging Earl not to pull his pants down and he told Earl not to do it,

they were supposed to be . . . hunting for a Christmas tree and he kept taking on for him not to do it." The child "took on" like this for several nights while the mother waited for him to come to her and tell her what had happened. This talking in his sleep was evidently common, for the mother stated: "[U]sually if [he does] anything . . . in the daytime he can tell you about it after he goes to sleep. . . . Like if he was to go fishing or anything, he can tell you all about what he's done that day during his fishing trip after he goes to sleep." The mother thought this was normal, because "[her] mother does it, too." The boy's mother waited for several nights, and finally decided to talk to him about it. She said: "I asked him about his dreams and he told me. I told him what he was saying in his dreams and he [came] out and told me about it [in detail]." She thereupon consulted a physician, and the children's and welfare service and law enforcement authorities.

The appellant complains principally of the admission of this mother's testimony concerning the boy's sleep-talking. *Held*:

1. The State contends the mother's testimony as to the talk uttered by the child in his sleep is not hearsay because it derives its value solely from the credit of the mother as witness to an "act" and does not rely upon the veracity and competency of the sleeping person (OCGA § 24-3-1 (a)); that is to say, the State does not insist upon the alleged sleep utterances themselves as truth or evidence of truth. Instead, the State contends they are one of those rare instances where the conduct of the witness in asking the child about the source of these utterances or about the matters implied in them, becomes material under *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910).

This evidence by the mother in this case is not inadmissible as hearsay. Hearsay evidence is that which derives its value not solely from the credit of the witness but rests mainly upon the veracity and competency of other persons. OCGA § 24-3-1. But it does not follow that merely because the declarations are those of another, they are hearsay. See *Momon v. State*, 249 Ga. 865, 866 (294 SE2d 482).

This evidence is admissible as original evidence under OCGA § 24-3-16, which is specific "indicia of reliability" legislation enacted to facilitate proof and evidence of sexual abuse of children. The statute is an outgrowth of the principles enunciated in *Timberlake v. State*, 158 Ga. App. 125, 128 (279 SE2d 283). It provides: "A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability."

This statute became effective after the trial of this case. Retro-

spective application of it to the propriety of the evidence is proper, since it impairs no vested right of the defendant. *Thompson v. Wilbert Vault Co.*, 178 Ga. App. 489, 491 (343 SE2d 515). This criminal defendant has no vested right in the mode of trial of or the remedy for his offense. OCGA § 1-3-5. This legislation involves evidentiary changes and may operate retrospectively. *Enger v. Erwin*, 245 Ga. 753, 754 (267 SE2d 25).

As to the fact that these declarations were made in the child's sleep, we find it unnecessary to get caught up in a debate whether dreams and sleep-talk have any relation to reality, and how much. See, e.g., 14 ALR 4th 803, 804, § 2. That is the jury's question in the particular case if the trial court determines they are admissible. In *Sutton v. State*, 237 Ga. 418, 419 (228 SE2d 815), the Georgia Supreme Court held admissible, as relevant and material, incriminating statements made by a defendant while he was asleep or in a drunken stupor. And as to whether the man was asleep or drunk, conscious or unconscious, the court held: "Such matters lie within the province of the jury to decide." The child's sleep utterances might, in the jury's estimation, have rather more credibility than less, if it is found they were a " 'spontaneous declaration' . . . made . . . in response to a startling event." If they are "a spontaneous reaction to the event rather than the result of 'reflective thought,' " such declarations may have a " 'special trustworthiness.' " *House v. State*, 252 Ga. 409, 410-411 (314 SE2d 195). That case involved the declarations of a man immediately prior to his death, which were admitted as a "spontaneous declaration" exception to the hearsay rule. The declarations of the child are original evidence under § 24-3-16, but the point we make is that the jury might determine that these declarations made in sleep were a spontaneous reaction to the event rather than the result of "reflective thought," and therefore might be deemed trustworthy to some degree.

A similar situation in a rare case was considered from every evidentiary angle by the Minnesota Supreme Court, which finally approved the admission of the evidence by saying: "The real issue is whether this evidence was sufficiently trustworthy. We believe that each case has to be considered on its own. It may be that generally evidence of this sort would be untrustworthy. Here, however, we are not dealing with a conniving person who was out to get someone by faking a bad dream, but with a child who obviously had suffered. The length of time between the last of the defendant's acts and the first of the sleep statements was only a few days. Finally, and we think importantly, the trial court knew that this was not the only evidence against defendant and that the evidence likely was going to be used primarily for corroborative purposes. If this were the only evidence connecting defendant to the crime, we would say that it was insuffi-

cient to support a conviction. But it was just one of a number of items of evidence offered in support of complainant's testimony. Under all these circumstances, the error, if any, was harmless." *State v. Posten*, 302 NW2d 638, 641 (5). Thus the Minnesota court accepted the evidence as corroborative proof of the truth of the sexual charge; in this state it is original evidence under OCGA § 24-3-16, and it is not the only evidence connecting defendant to the crime, for the child was available to testify in the proceedings.

We agree that "each case has to be considered on its own," but we conclude the trustworthiness of this evidence is the jury question. The evidence is admissible under § 24-3-16, as a statement by a child under 14, who is available to testify in the proceedings, because the circumstances of the statement carry the requisite sufficient indicia of reliability. These include the circumstances described by the mother in telling how the child would in his sleep commonly repeat the actual events of the day; and that she herself listened to what he was saying and found it so reliable based on her knowledge of him, or such a "sufficient indicia of reliability" that she waited to see if he would come and tell her what had happened, and finally asked him.

2. The evidence was also admissible as an outcry by the child, arguably so near to the event and so free of afterthought, connivance or "reflective thought," as to be part of the res gestae, and so as to be evidence of the crime itself, and not merely a statement by the child about the crime, as in Division 1. These outcries occurred the night the child returned to his own home. The law is well settled that res gestae outcries are admissible in evidence. (*Taylor v. State*, 176 Ga. App. 567, 573-574 (336 SE2d 832)) and we are not willing to say that because this one was made while the child was asleep, it was without any basis in fact.

3. Appellant contends there was no evidence of "force" so as to support the conviction for aggravated sodomy. This is not so. The boy's testimony proves he was forced to endure these acts, and that his step-grandfather Earl Godfrey used force in the commission of the act.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 19, 1987 —
REHEARING DENIED JUNE 3, 1987 — ▮▮▮▮▮▮▮

*William L. Reilly*, for appellant.
*Roger G. Queen, District Attorney*, for appellee.